[Cite as *State v. A.C.*, 2020-Ohio-713.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

    Appellant

v.

A.C.

    Appellee

C.A. No.     19CA0047-M

APPEAL FROM JUDGMENT
ENTERED IN THE
MEDINA MUNICIPAL COURT
COUNTY OF MEDINA, OHIO
CASE No.    18TRC08241

DECISION AND JOURNAL ENTRY

Dated: March 2, 2020

---

CALLAHAN, Presiding Judge.

{¶1} Appellant, the State of Ohio, appeals an order that suppressed evidence gained as the result of field sobriety tests. This Court reverses.

I.

{¶2} On November 24, 2018, at 2:45 a.m., a Medina police officer stopped a vehicle driven by A.C. based on a suspicion that she was driving while under a license suspension. When the officer approached, he noted a moderate odor of alcohol emanating from the vehicle. A woman in the passenger seat appeared to be unconscious, and a third individual sat in the back seat. After a brief conversation with A.C., the officer asked her to step from the vehicle. Shortly thereafter, the officer detained A.C. for the purpose of conducting field sobriety tests. Based on the evidence gained as a result of the field sobriety tests, A.C. was charged with operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a),

operating a motor vehicle with a prohibited concentration of alcohol in her breath in violation of R.C. 4511.19(A)(1)(d), and driving while under suspension in violation of R.C. 4510.16(A).

{¶3} A.C. moved to suppress the evidence gained as a result of the field sobriety tests, arguing that the officer did not have reasonable suspicion to extend her detention for the purpose of conducting the tests. The trial court granted the motion to suppress, and the State of Ohio filed this appeal.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED IN GRANTING APPELLEE [A.C.'S] MOTION TO SUPPRESS THEREBY DENYING INTRODUCTION OF EVIDENCE CONCERNING THE ADMINISTRATION OF FIELD SOBRIETY TESTS AND SUBSEQUENT BREATH TEST EVIDENCE IN THE CASE AT BAR.

{¶4} The State's single assignment of error argues that the trial court erred by granting A.C.'s motion to suppress. This Court agrees.

{¶5} This Court's review of a trial court's ruling on the motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court acts as the trier of fact during a suppression hearing and is best equipped to evaluate the credibility of witnesses and resolve questions of fact. *Id.*; *State v. Hopfer*, 112 Ohio App.3d 521, 548 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653 (4th Dist.1994). Consequently, this Court accepts a trial court's findings of fact if supported by competent, credible evidence. *Burnside* at ¶ 8. Once this Court has determined that the trial court's factual findings are supported by the evidence, we consider the trial court's legal conclusions de novo. *See id.* In other words, this Court then accepts the trial court's findings of fact as true and "must then independently determine, without deference to the conclusion of the

trial court, whether the facts satisfy the applicable legal standard." *Id*., citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997).

{¶6}   The investigatory stop of an automobile is a seizure for purposes of the Fourth Amendment and, consequently, must be based on a law enforcement officer's reasonable suspicion "that a motorist has committed, is committing, or is about to commit a crime." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 7, citing *Delaware v. Prouse*, 440 U.S. 648, 663 (1979) and *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984), quoting *U.S. v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975).   In justifying the stop, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

{¶7}   The duration of a traffic stop is determined by the purpose for which it was initiated, and a stop may not last longer than is necessary to accomplish that purpose. *Rodriguez v. U.S.*, 575 U.S. 348, 354 (2015). *See also State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 12, citing *State v. Howard*, 12th Dist. Preble Nos. CA2006-02-002, CA2006-02-003, 2006-Ohio-5656, ¶ 15; *State v. Rackow*, 9th Dist. Wayne No. 06-CA-0066, 2008-Ohio-507, ¶ 8. An officer may not prolong a stop for the purpose of conducting inquiries unrelated to the original purpose without "the reasonable suspicion ordinarily demanded to justify detaining an individual." *Rodriguez* at 355. "If, however, during the investigatory stop 'the officer discovers additional facts from which it is reasonable to infer additional criminal activity[,] the officer is permitted to lengthen the duration of the stop to investigate such suspicions.'"   (Alteration in original.)   *State v. Spees*, 9th Dist. Medina No. 17CA0061-M, 2018-Ohio-2568, ¶ 8, quoting *State v. Williams*, 9th Dist. Lorain No. 09CA009679, 2010-Ohio-3667, ¶ 15. *See Batchili* at ¶ 17 and paragraph two of the syllabus.   As with an initial stop, the question of whether an officer had

a reasonable suspicion for a continued detention is evaluated with reference to the totality of the circumstances. *Spees* at ¶ 8.

{¶8}   The trial court found that the officer stopped A.C. at approximately 2:45 a.m. after randomly checking her temporary license tag and determining that she was subject to a judgment suspension.  The trial court observed that the officer "noticed no erratic driving, lane violations, or any other unusual operation of the vehicle" and that "the stop unfolded without incident."  The trial court noted that when the officer approached the vehicle, A.C. opened the door and they spoke through that opening.  At that time, the officer detected an odor of alcohol emanating from the vehicle that he characterized as "'moderate.'"  The officer observed two other individuals in the car, one of whom appeared to be unconscious.  In response to the officer's inquiry, A.C. stated that the passenger was "'drunk.'"  The officer testified that he could not pinpoint the source of the odor of alcohol at that time.

{¶9}   The trial court found that A.C. told the officer that she and the passengers had left a bar located approximately five blocks away, that she was not aware of the judgment suspension on her license, and that she had consumed two beers earlier in the evening.  The officer testified that he did not remember whether A.C.'s eyes were bloodshot or glassy.  The trial court also noted that the officer testified "that [A.C.'s] speech did not sound slurred, that her responses did not sound delayed, that she was cooperative, and that she answered all of his questions normally." The trial court found that at that point, the officer asked A.C. to step from the vehicle so that he could inquire further.  When she did so, the officer noted that despite her "'really high' high-heeled shoes," A.C.'s gait was normal.  The officer noted that the odor of alcohol persisted when he spoke with A.C. at the rear of her vehicle, but according to the trial court's findings, the officer did not specify whether it originated from her breath or her clothing and acknowledged

the possibility "that the odor of alcohol from [A.C.]'s person might have transferred to her person from her vehicle's intoxicated occupants."[1]

{¶10} The State challenges the trial court's findings of fact in only one respect, arguing that "the trial court's determination that [the officer] decided to administer field sobriety tests when he asked [A.C.] to get out of her car[]" is not supported by clear and convincing evidence. It appears that the trial court did not actually conclude that the officer determined to conduct field sobriety tests when he asked A.C. to step from her car, but the language used by the trial court in this regard is indeterminate, at best: the trial court stated that the officer made this determination "at the latest, when, at [the officer's] request, [A.C.] had exited her vehicle and positioned herself behind it." This statement at least implies that the officer may have made the determination earlier and, in that respect, it is not supported by clear and convincing evidence because the record demonstrates that the officer asked A.C. to step from her vehicle, spoke with her at the rear of the vehicle, noted the odor of alcohol on her person, and decided to perform field sobriety tests.

{¶11} Accepting the remainder of the trial court's findings of fact as true, this Court must independently consider whether the trial court erred by determining that the officer did not have a reasonable suspicion of criminal activity that justified detaining A.C. for field sobriety tests. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8; *Spees*, 2018-Ohio-2568, at ¶ 13-14; *Hochstetler*, 2016-Ohio-8389, at ¶ 13; *State v. Mencini*, 9th Dist. Summit No. 27322, 2015-Ohio-89, ¶ 15-16. This analysis evaluates the circumstances surrounding the detention as a

---

[1] The trial court discounted the officer's testimony based on his agreement during cross-examination that it was "possible" that an odor of alcohol on one person can influence the odor of alcohol on another. This Court notes that the officer was responding to a theoretical question based on his experience, not "conceding that odors on [A.C.]'s person might possibly have transferred to her from her passengers[.]"

whole, not individually. *Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, at paragraph two of the syllabus, citing *U.S. v. Arvizu*, 534 U.S. 266, 274 (2002).

{¶12} Based on the totality of the circumstances surrounding the stop at issue in this case, the officer had a reasonable and articulable suspicion that A.C. was driving under the influence of alcohol. The stop occurred at 2:45 a.m. approximately five blocks from a bar. A.C. acknowledged that she and her passengers were coming from the bar, where they had been drinking. She admitted that she had consumed two beers, although it appeared that her passenger had consumed significantly more. The officer noted the moderate odor of alcohol when he spoke with A.C. through the open car door. When he spoke with A.C. alone at the rear of the vehicle, he confirmed that the odor of alcohol was coming distinctly from her person.

{¶13} To be sure, some of the officer's observations were not *individually* indicative of impairment: he did not observe any erratic driving on A.C.'s part, detect slurring in her speech or confusion in her behavior, or note problems with A.C.'s gait or balance when she walked to the back of the vehicle. The officer did not recall that her eyes were glassy or bloodshot. But these observations must be taken—along with the officer's other observations—as part of the totality of the circumstances surrounding the stop. They must not be considered in isolation. *Batchili* at paragraph two of the syllabus, citing *Arvizu* at 274. They must also be "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991). A reviewing court must "give due weight" to the officer's training and experience "and view the evidence as it would be understood by those in law enforcement." *Id*. at 88.

{¶14} This Court recognizes that cases such as this one present close calls for the officers at the scene and for the courts. *State v. Hall*, 5th Dist. Stark No. 2015 CA 00213, 2016-

Ohio-5787, ¶ 26. In this case, when we view the totality of the circumstances from the objective perspective of a reasonable and prudent police officer at the scene and with due weight to the officer's training and experience, we cannot agree that the officer lacked reasonable suspicion to justify administration of the field sobriety tests. Consequently, we conclude that the trial court erred by determining that the officer lacked a reasonable and articulable suspicion that justified detaining A.C. for field sobriety testing.

{¶15} The State's assignment of error is sustained.

### III.

{¶16} The State's assignment of error is sustained. The judgment of the Medina Municipal Court is reversed.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

———————————————
LYNNE S. CALLAHAN
FOR THE COURT

HENSAL. J.
<u>CONCURS.</u>

TEODOSIO, J.
<u>DISSENTING.</u>

{¶17} Because I would conclude, based on the totality of the circumstances, that the officer lacked the reasonable suspicion necessary to further detain A.C. to conduct field sobriety testing in this matter, and would thus affirm the trial court's judgment granting A.C.'s motion to suppress, I must respectfully dissent.

{¶18} During a lawful traffic stop, the reasonable suspicion required to further detain an individual to conduct field sobriety testing must be based on more than an ill-defined hunch; i.e., the officer must point to specific, articulable facts indicating that the individual may be committing a criminal act. *State v. Wood*, 9th Dist. Wayne No. 18AP0011, 2019-Ohio-3985, ¶ 7. In other words, an officer may request a motorist to perform field sobriety tests only when that request is justified by a reasonable suspicion based upon specific, articulable facts that the motorist is driving while intoxicated. *See, e.g., State v. Miller*, 8th Dist. Cuyahoga No. 106946, 2018-Ohio-4898, ¶ 41; *State v. Matzinger*, 4th Dist. Washington No. 16CA4, 2017-Ohio-324, ¶ 34.

{¶19} "[N]o single factor is dispositive of whether a law enforcement officer is legally justified in conducting field sobriety tests in any given case." *State v. Hochstetler*, 9th Dist. Wayne No. 16AP0013, 2016-Ohio-8389, ¶ 12. Instead, "the 'reasonable and articulable' standard applied to a prolonged traffic stop encompasses the totality of the circumstances, and a court may not evaluate in isolation each articulated reason for the stop." *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, paragraph two of the syllabus, citing *United States v. Arvizu*, 534 U.S. 266, 274 (2002).

{¶20} Upon review of the record in this case, I believe the trial court's findings of fact were based on competent, credible evidence. The officer conducted a traffic stop of A.C.'s vehicle not for any erratic driving or other moving violations indicative of impaired driving, but following a random check of the vehicle's temporary tag number and the subsequent discovery that A.C.'s driver's license was subject to a judgment suspension. There were two other occupants in the vehicle, including a female who was "passed out" and slumped over; A.C. informed the officer that the female passenger was drunk. The officer detected a moderate odor of alcohol coming from the vehicle, but admitted he could not determine the source of the odor. A.C. admitted that the group recently left a nearby bar and that she had consumed two beers earlier in the evening. The officer could not recall if A.C.'s eyes were bloodshot or glassy, but testified that her speech was not slurred and her responses were not delayed. She spoke clearly, answered all of his questions, and was cooperative. When she was asked to exit the vehicle, A.C. did so without incident, despite wearing "really high" high-heeled shoes. Although the odor of alcohol followed her when she exited the vehicle, the officer agreed that it was not coming from her breath. He further agreed that, based on his experience, it is possible for the odor of alcohol to transfer from one person to another.

{¶21} The trial court found that the point at which the officer decided to administer field sobriety testing could "reasonably be said to have arisen, *at the latest*, when, at [the officer's] request, [A.C.] had exited her vehicle and positioned herself behind it." (Emphasis added.). The majority concludes that this finding—which uses indeterminate language and implies that the officer's determination may have been made sometime earlier—is not supported by clear and convincing evidence because the record instead shows that the officer asked A.C. to exit the vehicle, spoke with her at the rear of the vehicle, noted the odor of alcohol on her, and *decided* to perform field sobriety tests. I disagree with the majority's interpretation of the record here, as the officer did not actually testify that he *decided* to conduct field sobriety testing at that specific point in time. He instead only testified that "at that point [he] *asked* her to perform some field sobriety tests * * *." (Emphasis added.). This statement does not indicate to me it was only at that very moment the officer *decided* to conduct field sobriety testing; rather, it appears that it was at that time when his decision to conduct field sobriety testing—which could have been made either at that moment *or* sometime earlier—was actually expressed outwardly to A.C. This distinction in the officer's choice of words, however slight or semantical it may appear, leads me to conclude that the trial court's finding—i.e., the point at which the officer decided to administer field sobriety testing could "reasonably be said to have arisen, at the latest, when, at [the officer's] request, [A.C.] had exited her vehicle and positioned herself behind it."—is, in fact, supported by competent, credible evidence in the record.

{¶22} In accepting the trial court's findings of fact as true, I would conclude, based on the totality of circumstances, that the officer did not have a reasonable suspicion, based on specific, articulable facts, that A.C. was under the influence by the time she exited the vehicle and positioned herself behind it, or at any time prior to that. It was indeed late that night, but

A.C. was pulled over due to a license suspension, which in no way indicates impairment. She admitted to coming from a nearby bar after consuming two beers earlier in the evening, but "'[f]or better or worse, the law prohibits *drunken* driving, not driving after a drink.'" (Emphasis sic.) *State v. High*, 9th Dist. Medina No. 17CA0019-M, 2017-Ohio-8264, ¶ 14, quoting *State v. Taylor*, 3 Ohio App.3d 197, 198 (1st Dist.1981). A moderate odor of alcohol emanated from an unknown source within the vehicle, but three occupants were inside, including a noticeably drunk and passed out passenger. A.C. was cooperative and answered the officer's questions in a normal fashion, without delay. Many of the classic indicia of intoxication are not present in this case, e.g., no odor of alcohol *coming from her breath*, no glassy or bloodshot eyes, no slurred speech, no delayed responses, and no lack of coordination. When A.C. was asked to exit the vehicle and walk to its rear, she did so without incident, despite wearing "really high" high-heeled shoes. Although the odor of alcohol followed A.C. when she exited the vehicle, it was not coming from her breath, and the officer agreed it is possible for such odors to transfer from person to person.

{¶23} Certainly, no individual factor is determinative in these cases. But, when the factors present in this case are viewed together, it is my opinion that the totality of the circumstances did not provide the officer with a reasonable suspicion that A.C. was driving while under the influence of alcohol. Consequently, he was not permitted to prolong the traffic stop and detain A.C. further to conduct field sobriety testing. I would therefore conclude that the trial court correctly granted A.C.'s motion to suppress and would affirm the court's judgment.

{¶24} Accordingly, I respectfully dissent.

APPEARANCES:

GREGORY HUBER, Prosecuting Attorney, for Appellant.

JOCELYN STEFACIN and KIMBERLY STOUT-SHERRER, Attorneys at Law, for Appellee.