[Cite as *State v. Fitzgerald*, 2020-Ohio-4346.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    18CA0031-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| RYAN FITZGERALD | WADSWORTH MUNICIPAL COURT COUNTY OF MEDINA, OHIO |
| Appellant | CASE No.    17 TRC 1808 |

DECISION AND JOURNAL ENTRY

Dated: September 8, 2020

SCHAFER, Judge.

{¶1}    Defendant-Appellant, Ryan Fitzgerald, appeals his conviction for operating a vehicle under the influence of drugs of abuse ("OVI") in the Wadsworth Municipal Court.  This Court previously affirmed Mr. Fitzgerald's conviction in *State v. Fitzgerald*, 9th Dist. Medina No. 18CA0031-M, 2019-Ohio-1038 ("*Fitzgerald I*").  Mr. Fitzgerald subsequently filed an application to reopen his appeal, alleging that his appellate counsel was ineffective.  This Court determined that a genuine issue existed as to whether appellate counsel was ineffective and granted the motion. For the reasons that follow, we vacate our prior decision in *Fitzgerald I* and reverse the judgment of the Wadsworth Municipal Court.

I.

{¶2}    On April 3, 2017, Sergeant Chafin of the Wadsworth Police Department observed a vehicle traveling 39 miles per hour within a 25 miles per hour zone and initiated a traffic stop of the vehicle.  Upon approaching the vehicle, Sgt. Chafin noted the scent of raw, unburnt marijuana.

Sgt. Chafin called for backup and, after speaking with the vehicle's occupants, detained the driver—Mr. Fitzgerald—for the purpose of conducting field sobriety tests. Sgt. Chafin ultimately arrested Mr. Fitzgerald for OVI. Sgt. Chafin transported Mr. Fitzgerald to the Wadsworth Police Station where Mr. Fitzgerald submitted a urine sample.

{¶3} Mr. Fitzgerald was charged with exceeding the speed limit in violation of Wadsworth Municipal Code section 73.10(C), operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them in violation of R.C. 4511.19(A)(1)(a), and operating with a concentration of marihuana metabolite in his urine in violation of R.C. 4511.19(A)(1)(j)(vii). Mr. Fitzgerald filed a motion to suppress the evidence obtained as a result of the traffic stop. Following a hearing the trial court denied Mr. Fitzgerald's motion. Pursuant to a plea agreement, Mr. Fitzgerald entered a plea of no contest to the violation of R.C. 4511.19(A)(1)(j)(vii) and the State dismissed the remaining charges. The trial court found Mr. Fitzgerald guilty and, following a presentence investigation, issued its sentence. The trial court thereafter stayed the sentence pending appeal.

{¶4} Mr. Fitzgerald filed an appeal asserting that the trial court erred when it denied his motion to suppress. Upon review, this Court determined it was unable to review Mr. Fitzgerald's arguments because a transcript of the suppression hearing was not made a part of the appellate record. *Fitzgerald I* at ¶ 6-9. Consequently, this Court overruled Mr. Fitzgerald's assignment of error and affirmed his conviction. *Id.* at ¶ 10. Mr. Fitzgerald subsequently filed an application to reopen this appeal, arguing that his appellate counsel was ineffective for failing to properly file the transcript of the suppression hearing. Upon review of the application, this Court found that there was a genuine issue of whether appellate counsel was ineffective in his representation of Mr. Fitzgerald and granted the application to reopen.

{¶5}     Mr. Fitzgerald now raises two assignments of error for our review.

II.

**Assignment of Error I**

**The trial court erred in overruling the motion to suppress[.]**

{¶6}     In his first assignment of error, Mr. Fitzgerald contends that the trial court erred when it denied his motion to suppress because: (1) the officer did not have reasonable articulable suspicion of a crime to detain him in order to conduct an OVI investigation; (2) the officer did not have probable cause to arrest him for operating a vehicle under the influence; and (3) the urine test was not conducted in accordance with the regulations of the Ohio Department of Health.

{¶7}     Appellate review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.  "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses."  *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992).  Accordingly, an appellate court must accept a trial court's findings of fact when they are supported by competent, credible evidence.  *Id*. However, accepting those facts as true, the appellate court must independently determine, without deference to the trial court's conclusion, whether those facts satisfy the applicable legal standard. *Burnside* at ¶ 8.

**Reasonable Suspicion to Detain**

{¶8}     Mr. Fitzgerald does not dispute that the officer had reasonable articulable suspicion to make the initial traffic stop after observing his vehicle traveling in excess of the speed limit. Rather, Mr. Fitzgerald contends that the officer did not have reasonable suspicion to extend his detainment beyond the scope of an ordinary traffic stop in order to conduct an OVI investigation.

{¶9}    When an officer stops a vehicle for a violation of a traffic law, an investigatory stop occurs. *State v. Johnson*, 9th Dist. Medina No. 03CA0127-M, 2004-Ohio-3409, ¶ 11.  Generally, "[a]n investigative stop may last no longer than necessary to accomplish the initial goal of the stop." *State v. Rackow*, 9th Dist. Wayne No. 06CA0066, 2008-Ohio-507, ¶ 8.  *Accord Rodriguez v. United States*, 575 U.S. 348, 354-255 (2015).  If, however, during the investigatory stop "the officer discovers additional facts from which it is reasonable to infer additional criminal activity[,] the officer is permitted to lengthen the duration of the stop to investigate such suspicions." *State v. Williams*, 9th Dist. Lorain No. 09CA009679, 2010-Ohio-3667, ¶ 15.  *Accord State v. Robinette*, 80 Ohio St.3d 234, 241 (1997).

{¶10}    A police officer does not need probable cause to conduct field sobriety tests, but needs only a reasonable suspicion that a driver is impaired.  *See State v. High*, 9th Dist. Medina No. 17CA0019-M, 2017-Ohio-8264, ¶ 8.  Reasonable suspicion is something less than probable cause and is determined by considering and evaluating the totality of the circumstances.  *See State v. Phillips*, 9th Dist. Medina No. 16CA0018-M, 2017-Ohio-1312, ¶ 6.  We look to "'the facts available to the officer at the moment of the seizure or the search'" and consider whether those facts would "'warrant a man of reasonable caution in the belief that the action taken was appropriate.'" *State v. Smiley*, 9th Dist. Summit No. 23815, 2008-Ohio-1915, ¶ 19, quoting *State v. Bobo*, 37 Ohio St.3d 177, 178-179 (1988), quoting *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968).

{¶11}    In determining that Sgt. Chafin had reasonable suspicion to conduct the field sobriety tests in this case, the trial court found that although the sergeant did not witness any erratic driving or other indicia of impairment, he did detect the odor of raw marijuana emanating from the vehicle immediately upon approach and that Mr. Fitzgerald had admitted to smoking marijuana earlier in the day.  The trial court also noted that Mr. Fitzgerald's passenger appeared to be "highly

'stoned' and told the officer he and the driver had smoked marijuana about 30 minutes before being stopped."

{¶12} A review of the transcript and video evidence shows that trial court's findings are based on competent credible evidence. Sgt. Chafin testified that immediately upon making contact with Mr. Fitzgerald and his passenger, the sergeant noticed "an overwhelming smell of raw marijuana coming from the vehicle." Sgt. Chafin called for backup in order to search the vehicle for marijuana. When backup arrived, Sgt. Chafin asked Mr. Fitzgerald how much marijuana was in the vehicle. Mr. Fitzgerald told him there was less than two grams. Upon receiving this information, Sgt. Chafin removed Mr. Fitzgerald from the vehicle and had him sit in the patrol car.

{¶13} Sgt. Chafin then spoke to Mr. Fitzgerald's passenger outside of the vehicle while another officer conducted a search of the interior. Sgt. Chafin noted that the passenger had difficulty exiting the vehicle and that "he had blood shot eyes, reddening of the conjunctiva" indicative of marijuana use. Sgt. Chafin stated that during their conversation, the passenger admitted that both he and Mr. Fitzgerald had consumed marijuana "possibly as recently as a half hour before the traffic stop." At that point Sgt. Chafin became concerned that Mr. Fitzgerald may have been driving his vehicle impaired. Consequently, Sgt. Chafin had Mr. Fitzgerald exit the patrol car to perform a series of field sobriety tests. A review of Sgt. Chafin's dash-camera video footage shows that after Sgt. Chafin had Mr. Fitzgerald exit the patrol car, but prior to conducting the tests, Sgt. Chafin asked Mr. Fitzgerald when he last smoked marijuana. Mr. Fitzgerald responded, a "couple of hours ago."

{¶14} On cross-examination, Sgt. Chafin acknowledged that he did not observe any erratic driving that would suggest Mr. Fitzgerald was impaired. The sergeant further acknowledged that prior to conducting the field sobriety tests, he did not observe any physical

indications of impairment in Mr. Fitzgerald and that the only "potential issue" was that he misspelled the name of the street where he lived by dropping the last letter.

{¶15}  On appeal, Mr. Fitzgerald does not contest the trial court's factual findings.  Rather, Mr. Fitzgerald contends that based on the totality of the circumstances, the trial court erred in its ultimate determination that Sgt. Chafin had reasonable articulable suspicion to detain him in order to conduct field sobriety tests.  Mr. Fitzgerald argues that in the absence of any indicia of impairment, the smell of unburnt marijuana and his "vague admission of consuming some marijuana earlier in the day" was not sufficient to constitute reasonable suspicion in this case.  We agree.

{¶16}  In the case of an OVI investigation based on suspected alcohol impairment, this Court has held that "a mild odor of alcohol can provide reasonable suspicion for field sobriety testing when paired with other factors such as a traffic infraction, bloodshot eyes, and an admission to having consumed two beers."  *High*, 2017-Ohio-8264, ¶ 14, citing *State v. Tomko*, 9th Dist. Summit No. 19253, 1999 WL 1037762, *3-4 (Nov. 3, 1999).  We have further held, however, that "this Court cannot conclude that the result is the same when an unspecified odor of alcohol is paired strictly with an admission to having had a few beers[.]"  *Id.* citing *State v. Taylor*, 3 Ohio App.3d 197, 198 (1st Dist.1981).  We see no rational argument why reasonable suspicion to conduct field sobriety testing during an OVI investigation based on suspected marijuana impairment would require anything less.

{¶17}  Based on the totality of the circumstances and the record before us, we cannot conclude that the State produced enough competent, credible evidence to show that the sergeant possessed a reasonable suspicion, based on specific articulable facts, that Mr. Fitzgerald was operating his vehicle under the influence of marijuana, necessary to detain him in order to conduct

field sobriety testing. Sgt. Chafin testified that he only became concerned that Mr. Fitzgerald may have been driving impaired after Mr. Fitzgerald's passenger—who Sgt. Chafin acknowledged appeared to be "stoned"—told him he and Mr. Fitzgerald "possibly" smoked marijuana within the half an hour before the traffic stop. This statement, the odor of raw marijuana, Mr. Fitzgerald's admission that he had smoked marijuana a couple of hours before, and a de minimis misspelling were the only purported indicia of impairment Sgt. Chafin testified he observed prior to having Mr. Fitzgerald perform field sobriety tests. Sgt. Chafin did not testify as to how strong the odor was or if, after Mr. Fitzgerald exited the vehicle and moved away from it and his visibly impaired passenger, he smelled marijuana—raw or burnt—on Mr. Fitzgerald's person. Sgt. Chafin explicitly stated that he did not observe any erratic driving by Mr. Fitzgerald and further stated that he did not observe any physical indicators of impairment in Mr. Fitzgerald such as red glossy eyes, lethargy or difficulty walking, inappropriate laughter, disinterest in the events happening around him, difficulty communicating, or paranoia. Though Mr. Fitzgerald had admitted to smoking marijuana hours prior to the stop, Sgt. Chafin testified that he only smelled raw marijuana and specifically stated that raw marijuana and burnt marijuana have "two distinct odors."

**Probable Cause to Arrest**

{¶18} Mr. Fitzgerald also argues that the trial court erred when it determined that Sgt. Chafin had probable cause to arrest him for OVI. Upon a review of the record, we agree that the totality of the circumstances in this case do not support the trial court's determination that probable cause existed to arrest Mr. Fitzgerald for operating a vehicle under the influence.

{¶19} "An officer has probable cause to arrest an individual for impaired driving if, 'at the time of arrest, the officer had sufficient facts derived from a reasonably trustworthy source to cause a prudent person to believe the suspect was driving under the influence.'" *State v. Spees*,

9th Dist. Medina No. 17CA0061-M, 2018-Ohio-2568, ¶ 30, quoting *State v. Hopp*, 9th Dist. Summit No. 28095, 2016-Ohio-8027, ¶ 8. A probable cause determination is a fact-intensive inquiry that "requires consideration of the totality of the circumstances known to the officer at the time of the arrest." *State v. Rogers*, 9th Dist. Wayne No. 16AP0014, 2017-Ohio-357, ¶ 9.

{¶20} "'To prove impaired driving ability, the [S]tate can rely on physiological factors (e.g., odor of alcohol, glossy or bloodshot eyes, slurred speech, confused appearance) to demonstrate that a person's physical and mental ability to drive was impaired.'" *State v. Slone*, 9th Dist. Medina No. 04CA0103-M, 2005-Ohio-3325, ¶ 9, quoting *State v. Holland*, 11th Dist. Portage No. 98-P-0066, 1999 WL 131665, *5 (Dec. 17, 1999). The totality of the circumstances can support a finding of probable cause to arrest even when the results of the field sobriety tests must be excluded. *State v. Sunday*, 9th Dist. Summit No. 22917, 2006-Ohio-2984, ¶ 32. "The amount of evidence necessary for probable cause to suspect a crime is being committed is less evidence than would be necessary to support a conviction of that crime at trial." *State v. McGinty*, 9th Dist. Medina No. 08CA0039-M, 2009-Ohio-994, ¶ 11.

{¶21} In making its determination that the sergeant had probable cause to arrest Mr. Fitzgerald, the trial court relied in part on the results of the field sobriety tests, but also determined:

> The officer had the odor of marijuana; defendant had some confusing statements about where they were going; misspelled his own address; a small amount of marijuana was found in the possession of the driver; his passenger was highly "stoned" on marijuana and admitted to smoking marijuana 30 minutes before being stopped[.]

{¶22} Although a review of the record shows the trial court's other findings are based on competent credible evidence, we note that the trial court's finding that Mr. Fitzgerald made "some confusing statements about where they were going" is not supported by the record. Sgt. Chafin testified that Mr. Fitzgerald told him that he and his passenger were headed to Steak n' Shake. A

review of the dash-camera footage also shows that Mr. Fitzgerald clearly stated that he was headed to Steak n' Shake. Sgt. Chafin did testify that no Steak n' Shake restaurants are located within Wadsworth and that Mr. Fitzgerald was driving on a street that was not "the quickest, fastest most efficient way to get to" a major thoroughfare that would take someone out of the city. Sgt. Chafin further stated that when he asked Mr. Fitzgerald why he had turned down that particular road, Mr. Fitzgerald stated that he thought it would take him to a main thoroughfare. Sgt. Chafin did not testify that Mr. Fitzgerald made any other statements about where he was headed.

{¶23} Excluding the evidence obtained as a result of the field sobriety tests, the State did not present sufficient evidence to show the officer had probable cause to arrest Mr. Fitzgerald for OVI. Sgt. Chafin testified that he did not witness any erratic driving and did not observe any physical or mental indicia of impairment. Sgt. Chafin also testified that Mr. Fitzgerald was polite and cooperative throughout the traffic stop and after his arrest.

{¶24} Although Sgt. Chafin testified that Mr. Fitzgerald misspelled his street name, his spelling error was de minimis. Sgt. Chafin testified that Mr. Fitzgerald told him he lived on "Esmerelda," but when asked how to spell it, Mr. Fitzgerald dropped the final "a." Although Mr. Fitzgerald dropped the final letter, Sgt. Chafin wrote the full word "Esmerelda" and confirmed with Mr. Fitzgerald the proper spelling.

{¶25} Additionally, although Sgt. Chafin testified that Mr. Fitzgerald's passenger stated they had smoked within the last thirty minutes, Sgt. Chafin also testified that he observed the passenger to be visibly impaired and that individuals who have used marijuana "may be unable to tell how much time has elapsed or what time it is[.]" Additionally, despite Mr. Fitzgerald's statement that he and his passenger were headed to Steak n' Shake and Sgt. Chafin's testimony that Mr. Fitzgerald was not traveling on a road that would take him to a main thoroughfare, Sgt.

Chafin further testified that Mr. Fitzgerald did not live in Wadsworth. Sgt. Chafin stated that Mr. Fitzgerald's identified his home address as being in Florida and acknowledged that Mr. Fitzgerald had a Florida driver's license and his vehicle had a Florida license plate.

{¶26} Upon review, we conclude that the trial court erred when it determined that the State present sufficient evidence to show that the officer had probable cause to arrest Mr. Fitzgerald for OVI. *Compare State v. Krzemieniewski*, 9th Dist. Medina No. 15CA0015-M, 2016-Ohio-4991, ¶ 19 (holding that despite the appellant "passing" the field sobriety tests, probable cause existed to arrest appellant for OVI under the totality of the circumstances based on the appellant's "traffic violations, his bloodshot and glossy eyes, his admission of having smoked marijuana recently, and the odor and presence of marijuana (albeit raw) in the car.").

**Urine Screen**

{¶27} Finally, Mr. Fitzgerald argues that the trial court erred when it denied his motion to suppress the results of his urine test because the test was not administered in accordance with the Ohio Department of Health regulations. We do not reach the merits of Mr. Fitzgerald's argument, however, because our resolution above renders it moot. Because the officer did not have probable cause to arrest Mr. Fitzgerald for OVI, all evidence obtained as a result of that arrest must be suppressed.

{¶28} Mr. Fitzgerald's first assignment of error is sustained in part and moot in part.

### Assignment of Error II

**Prior appellate counsel was ineffective by failing to file a transcript that conformed to the appellate and local rules[.]**

{¶29} In his second assignment of error, Mr. Fitzgerald contends that his prior appellate counsel was ineffective for failing to file a transcript that conformed to the appellate and local rules. We agree.

{¶30} As stated above, this Court determined that there was a genuine issue of whether appellate counsel was deficient in this case. "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62. The two-pronged analysis in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), is the appropriate standard to determine whether Mr. Fitzgerald received ineffective assistance of appellate counsel. *State v. Were*, 120 Ohio St.3d 85, 2008-Ohio-5277, ¶ 10.

{¶31} In *Fitzgerald I*, this Court determined it was unable to review Mr. Fitzgerald's arguments because a transcript of the suppression hearing was not made a part of the appellate record. 2019-Ohio-1038 at ¶ 6-9. Consequently, this Court overruled Mr. Fitzgerald's assignment of error and affirmed his conviction. *Id.* at ¶ 10. Because the transcript of the suppression hearing was subsequently made a part of the record, this Court was able to review it and reach the merits of Mr. Fitzgerald's arguments. Thus, Mr. Fitzgerald's prior appellate counsel was deficient. Further, our resolution of Mr. Fitzgerald's first assignment of error shows that Mr. Fitzgerald was prejudiced by prior appellate counsel's deficiency. Mr. Fitzgerald's second assignment of error is sustained.

{¶32} Pursuant to App.R. 26(B)(9), "[i]f th[is C]ourt finds that the performance of appellate counsel was deficient and the applicant was prejudiced by that deficiency, th[is C]ourt shall vacate its prior judgment and enter the appropriate judgment." Therefore, the previous decision of this Court is vacated and the judgment of the Wadsworth Municipal Court is reversed.

III.

{¶33} Mr. Fitzgerald's first assignment of error is sustained in part and moot in part. Mr. Fitzgerald's second assignment of error is sustained. Therefore, we vacate our prior judgment in

*Fitzgerald I*.  The judgment of the Wadsworth Municipal Court convicting Mr. Fitzgerald of OVI is reversed and vacated.

Judgment reversed,<br>and conviction vacated.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wadsworth Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JULIE A. SCHAFER
FOR THE COURT

TEODOSIO, J.
<u>CONCURRING.</u>

{¶34}  I concur in the majority opinion.  Cases involving the reasonable suspicion required to further detain a motorist for field sobriety testing "'often present close calls, both for the courts

and the law enforcement officers on the scene[.]'" *State v. Ghouche*, 9th Dist. Medina No. 19CA0034-M, 2020-Ohio-3311, ¶ 9, quoting *State v. Hall*, 5th Dist. Stark No. 2015 CA 00213, 2016-Ohio-5787, ¶ 26. While a trained and experienced law enforcement officer may notice one or more factors leading to a heightened suspicion of impaired driving, no single factor is actually dispositive and the "reasonable and articulable" standard requires consideration of the totality of the circumstances. *See State v. Wood*, 9th Dist. Wayne No. 18AP0011, 2019-Ohio-3985, ¶ 7. "A totality of the circumstances review includes consideration of '(1) [the] location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances.'" *State v. Butcher*, 9th Dist. Medina No. 19CA0038-M, 2020-Ohio-3524, ¶ 8, quoting *State v. Kordich*, 9th Dist. Medina No. 15CA0058-M, 2017-Ohio-234, ¶ 7, quoting *State v. Biehl*, 9th Dist. Summit No. 22054, 2004-Ohio-6532, ¶ 14.

{¶35} Although certainly not identical, the fact-pattern in Mr. Fitzgerald's case appears rather similar to that of *State v. A.C.*, 9th Dist. Medina No. 19CA0047-M, 2020-Ohio-713, in which I authored a dissenting opinion. The facts available to the officer in *A.C.* included: (1) a traffic stop at 2:45 A.M. for a possible suspended license; (2) no erratic driving; (3) two passengers, including one drunk and "passed out" passenger; (4) the moderate odor of alcohol emanating from somewhere within the vehicle; (5) an admission to recently leaving a bar; (6) an admission to consuming two beers earlier in the evening; (7) no bloodshot or glassy eyes; (8) clear speech without any slurring; (9) all of the officer's questions being answered without any delay; (10) cooperative attitude; (11) exit from the vehicle without incident, despite wearing really high-heeled shoes; (12) the odor of alcohol following A.C., but possibly due to a person-to-person transfer of odors. *See id.* at ¶ 8-9 and ¶ 20 (Teodosio, J., dissenting).

{¶36} Mr. Fitzgerald was stopped for speeding at 4:44 P.M. in the afternoon, not during late evening or overnight hours. While being followed by Sergeant Chafin, Mr. Fitzgerald was observed making a complete stop at a stop sign and using his right turn signal appropriately. At no time did Sergeant Chafin observe any erratic driving or other moving violations indicative of impaired driving. According to the sergeant, Mr. Fitzgerald was engaging and responding appropriately to all of his questions during the stop. He was cooperative and polite and never appeared to be deceptive. He did not exhibit any of the common indicia of impairment. His eyes appeared normal and he did not slur his speech or laugh inappropriately. There were no lethargic movements and no dexterity issues or issues with small or large motor movements. Mr. Fitzgerald never stumbled or had any issues with balance, leaning, odd walking, or weaving while walking. In fact, Sergeant Chafin agreed at the suppression hearing with defense counsel that Mr. Fitzgerald appeared "perfectly normal." The only "potential issue," according to the sergeant, was Mr. Fitzgerald's trivial misspelling of his street address when he was providing his information, as he neglected to include the "A" at the end of "Esmerelda."

{¶37} Mr. Fitzgerald did freely admit both to smoking marijuana a "couple of hours ago" and to the presence of a small amount of marijuana ("less than two grams") in the vehicle, but he claimed it had been left there by someone else. Sergeant Chafin also testified that he noticed an overwhelming odor of raw marijuana emanating from within the vehicle, but the record is silent as to any such odor coming directly from Mr. Fitzgerald. The vehicle's passenger, on the other hand, appeared by all accounts to be "highly 'stoned.'" Sergeant Chafin recognized ample indicia of intoxication with the passenger, including red, bloodshot eyes and issues with balance. The passenger admitted he had marijuana on his person and admitted to "moving some of the paraphernalia from inside the vehicle." This "highly 'stoned'" passenger claimed that he and Mr.

Fitzgerald had smoked marijuana "possibly" thirty minutes ago. Sergeant Chafin admitted it was only at this point that he became "concerned" Mr. Fitzgerald might also be impaired, so he had him exit the vehicle for field sobriety testing. Sergeant Chafin did testify that speeding could reflect impairment due to one's inability to properly judge time and distance. Even if the trial court accepted this opinion as true, however, logically this opinion would call into question the "highly 'stoned'" passenger's statement that he had possibly smoked marijuana with Mr. Fitzgerald thirty minutes ago.

{¶38} Despite the odor of raw marijuana in a vehicle transporting a "highly 'stoned'" passenger and Mr. Fitzgerald's admission to smoking marijuana hours ago, even when combined with lesser factors such as speeding and misspelling a street name, Mr. Fitzgerald appeared completely sober to Sergeant Chafin at 4:44 in the afternoon. Only after the "highly 'stoned'" passenger said that the two had smoked "possibly" thirty minutes ago did the sergeant admit he became concerned Mr. Fitzgerald might also be impaired, despite his own testimony that "[p]eople that are high on marijuana can have a difficult time with perceiving time * * *."

{¶39} When considering the totality of the circumstances present in this particular case, I must concur that Sergeant Chafin did not possess the requisite reasonable suspicion to further detain Mr. Fitzgerald for field sobriety testing.

CALLAHAN, P. J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶40} I agree with the majority's conclusion that Mr. Fitzgerald's prior appellate counsel was ineffective, so I concur in the portion of the majority opinion that vacates our earlier decision. Because Sergeant Chafin had a reasonable articulable suspicion that justified the administration of

field sobriety tests, however, I disagree with the majority's resolution of Mr. Fitzgerald's first assignment of error, and I must dissent on that basis.

{¶41} Relying on cases from other districts, Mr. Fitzgerald asserts that "when there is no erratic or impaired driving, there must be additional indicia of intoxication beyond mere odor and bloodshot, glassy eyes[]" to form a reasonable suspicion justifying the administration of field sobriety tests. This Court has never articulated this rule, and the facts of *State v. High*, 9th Dist. Medina No. 17CA0019-M, 2017-Ohio-8264, do not support the conclusion that we have done so. In this case, the trial court found that Sergeant Chafin detected the odor of raw marijuana "immediately" when he approached the vehicle. Indeed, Sergeant Chafin characterized the odor as "overwhelming." Mr. Fitzgerald admitted that he had smoked marijuana that day. The trial court found that his passenger, who "appeared to be highly 'stoned' on marijuana[,]" claimed that he and Mr. Fitzgerald had smoked within the previous thirty minutes. In addition, Sergeant Chafin testified that marijuana paraphernalia was found in the vehicle and that the speeding violation that was the basis for the stop could, based on his training and experience, have reflected impaired attention span and inability to "properly judge time and distance" characteristic of marijuana use.

{¶42} Reasonable suspicion to administer field sobriety tests is measured by the totality of the surrounding circumstances. *State v. A.C.*, 9th Dist. Medina No. 19CA0047-M, 2020-Ohio-713, ¶ 7, citing *State v. Spees*, 9th Dist. Medina No. 17CA0061-M, 2018-Ohio-2568, ¶ 8. These circumstances must be "'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold[,]'" and this Court "must 'give due weight' to the officer's training and experience 'and view the evidence as it would be understood by those in law enforcement.'" *A.C.* at ¶ 13, citing *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991). Sergeant Chafin had a reasonable suspicion based on the totality of the surrounding circumstances that Mr.

Fitzgerald was either impaired by marijuana use or that he was in violation of R.C. 4511.19(A)(1)(j)(vii).

{¶43} I respectfully dissent from the majority's resolution of Mr. Fitzgerald's first assignment of error.

APPEARANCES:

JOSEPH HADA, Attorney at Law, for Appellant.

THOMAS MORRIS, Attorney at Law, for Appellee.