[Cite as *State v. Speelman*, 2023-Ohio-992.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case Nos. 22-COA-016 & 22-COA-017 |
| | : | |
| GAVIN A. SPEELMAN | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Ashland Municipal Court, Case Nos. 2021 TRC 6575 & 2021 CRB 1004 |
| JUDGMENT: | AFFIRMED |
| DATE OF JUDGMENT ENTRY: | March 24, 2023 |

APPEARANCES:

| | |
|---|---|
| For Plaintiff-Appellee: | For Defendant-Appellant: |
| ANDREW N. BUSH | CASSANDRA JM MAYER |
| ASST. DIRECTOR OF LAW | 452 Park Ave. West |
| 1213 E. Main St. | Mansfield, OH 44906 |
| Ashland, OH 44805 | |

*Delaney, J.*

{¶1} Defendant-Appellant Gavin A. Speelman appeals the May 11, 2022 sentencing entry of the Ashland Municipal Court, wherein Speelman entered a guilty plea after the trial court denied his motion to suppress on April 27, 2022. Plaintiff-Appellee is the State of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} On September 6, 2021, Trooper Richard Kluever of the Ohio State Highway Patrol was on duty in a marked patrol car on U.S. Route 30, just west of State Route 60, in Ashland County. The speed limit on U.S. Route 30 is 60 mph. At approximately 2:50 p.m., Trooper Kluever observed a vehicle traveling 77 mph as determined by a laser. Trooper Kluever initiated a traffic stop based on the vehicle's speed. He did not observe any other issues other than the vehicle's speed.

{¶3} After the vehicle stopped, Trooper Kluever approached the vehicle from the passenger side. He went to the passenger side window and observed Defendant-Appellant Gavin A. Speelman in the driver's seat and the only occupant in the vehicle. When he approached the vehicle, Trooper Kluever detected the odor of raw marijuana coming from the vehicle, a smell he recognized based on his training and experience.

{¶4} Trooper Kluever asked Speelman for his information. Speelman was coming from work. Speelman provided Trooper Kluever with his driver's license and some expired insurance cards. Trooper Kluever asked Speelman if there was anything else in the vehicle that he should know about and Speelman answered, no. He asked if Speelman had a medical marijuana card, and Speelman answered, no. Trooper Kluever advised Speelman that he could smell the odor of marijuana and asked him why that

would be. Speelman answered that he had people from work in his vehicle, but he did not say when this had occurred.

{¶5} When Trooper Kluever was speaking with Speelman, he observed that Speelman's eyes were red and bloodshot. Speelman seemed nervous. He was shaking and breathing heavily. Speelman admitted to Trooper Kluever that he was nervous and shaking, which the officer admitted happens when people are pulled over by the police.

{¶6} Trooper Kluever asked Speelman to exit his vehicle and placed him in the rear of his patrol car. He asked Speelman again if he had a medical marijuana card or if there were other types of drugs in the car. Speelman said no. Trooper Kluever asked Speelman about marijuana use in the vehicle, to which Speelman said other people were in his vehicle smoking marijuana sometime in the past. At this point, Trooper Kluever gave Speelman his *Miranda* rights, after which Speelman made no further statements.

{¶7} While another officer was on route, Trooper Kluever conducted a search of Speelman's vehicle. The basis for the search of the vehicle was Speelman's red and bloodshot eyes, Speelman's nervousness and heavy breathing, the odor of marijuana coming from the vehicle, and Speelman's statements that marijuana had been used in the car. During his search of the vehicle, Trooper Kluever located (1) a vape pen and three nearly empty cartridges on the center console, which he believed contained THC based on his training and experience; (2) a single gummy in the center console, which he believed was a THC/marijuana gummy based on his training and experience; (3) a backpack containing a baggie of suspected marijuana; and (4) a tool case in the trunk containing a baggie of suspected marijuana.

{¶8} The contents of the two baggies were later tested and determined to be marijuana.

{¶9} Based on the search of the vehicle where Trooper Kluever located suspected marijuana and drug paraphernalia, the odor of marijuana coming from the vehicle, Speelman's red and bloodshot eyes, and Speelman's nervousness, Trooper Kluever asked Speelman to perform Standardized Field Sobriety Tests. Based on Speelman's performance on the field sobriety tests, Trooper Kluever placed Speelman under arrest.

{¶10} Speelman submitted to a urine test which later showed a Marijuana Metabolite level more than double the legal limit.

{¶11} In Case No. 21CRB01004, Speelman was cited with a violation of R.C. 2925.14(1), drug paraphernalia, and R.C. 2925.11(C)(3), possession of marijuana. In Case No. 21TRC06575, Speelman was cited with a violation of R.C. 4511.21(D)(2), a speeding violation; a violation of R.C. 4511.19(A)(1)(a), driving under the influence of alcohol/drug of abuse; and a violation of R.C. 4511.19(A)(1)(j)(viii)(II), operating with a concentration of marijuana metabolite in his urine. Speelman entered a plea of not guilty.

{¶12} On February 14, 2022, Speelman filed a motion to suppress. He argued Trooper Kluever lacked evidence of probable cause to remove him from his vehicle, detain him, search his vehicle, and perform field sobriety tests. A hearing was held on April 5, 2022.

{¶13} On April 27, 2022, the trial court issued its judgment entry denying Speelman's motion to suppress. The trial court found Trooper Kluever had probable cause to search Speelman's vehicle based on Trooper Kluever's detection of the

marijuana smell coming from the vehicle, Speelman's admission that people from work smoked marijuana in his car and he was stopped coming from work, Speelman's red and bloodshot eyes, and Speelman's extreme nervousness. The trial court next found Trooper Kluever had reasonable suspicion to expand the detention beyond the traffic stop to conduct the field sobriety tests. The trial court referred to the reason for the traffic stop, speeding 17 mph over the posted speed limit. The trial court next referred to Speelman's admission that he was coming from work and that people from work had smoked marijuana in his car, his red and bloodshot eyes, the odor of marijuana coming from the vehicle, and the items found during Trooper Kluever's search of Speelman's vehicle.

{¶14} On May 11, 2022, Speelman entered a no contest plea to all pending charges in both cases. The trial court found Speelman guilty of the charges. The trial court sentenced Speelman to 60 days in the county jail, 57 days suspended, and probation for one year. The trial court granted Speelman's motion for stay of execution of sentence pending appeal.

## ASSIGNMENTS OF ERROR

{¶15} Speelman raises two Assignments of Error:

{¶16} "I. THE TRIAL COURT ERRED WHEN IT MADE FINDINGS OF FACT THAT WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, FAILED TO APPLY THE CORRECT LAW AND INCORRECTLY DECIDED THE ULTIMATE ISSUE IN ORDER TO SUPPORT A DENIAL OF DEFENDANT'S MOTION TO SUPPRESS AND/OR LIMIT THE USE OF EVIDENCE.

{¶17} "II. THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION TO SUPPRESS AND/OR LIMIT THE USE OF EVIDENCE BECAUSE THE

TROOPER VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHT TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE."

### ANALYSIS

### I. and II.

{¶18} We consider Speelman's first and second Assignments of Error together because they are interrelated.

### Standard of Review

{¶19} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶20} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. *See State v.*

*Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *See Williams, supra*. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994).

**Search of the Vehicle**

{¶21} Speelman does not dispute that Trooper Kluever had a reasonable articulable suspicion to make the initial traffic stop after observing his vehicle travelling in excess of the speed limit. He argues that the search of his vehicle was not supported by probable cause. Generally, "[f]or a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant." *State v. Tillman*, 2022-Ohio-4341, 203 N.E.3d 71, ¶ 18 (5th Dist.) quoting *State v. Moore*, 90 Ohio St.3d 47, 49, 2000-Ohio-10, 734 N.E.2d 804. However, "the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle," pursuant to the automobile exception to the warrant requirement. There need not be other tangible evidence to justify a warrantless search of the vehicle. *Moore* at 48, 2000-Ohio-10, 734 N.E.2d 804.

{¶22} At the suppression hearing, Trooper Kluever testified that he "could smell the odor of marijuana coming from the vehicle." (T. 10-11). He testified that he had been

employed as Trooper with the Ohio State Highway Patrol for 10 years. (T. 6). He had received training in the identification and apprehension of drug related offenses. (T. 6). Trooper Kluever described the training and his experience in the field as to marijuana:

> A. One of the things that we were exposed to was the odor of marijuana. We were brought marijuana that was tested in the lab and brought in that was marijuana, and able to smell the odor of it, and also taken outside and it was burnt, and we were able to smell the odor of burnt marijuana.
>
> Q. And does marijuana have a distinct odor, both raw and burnt marijuana?
>
> A. Yes.
>
> Q. And have you also had occasion to come in contact with that in the field?
>
> A. Yes.
>
> Q. Any idea how often?
>
> A. Right now it's almost weekly.

(T. 7).

{¶23} Because Trooper Kluever testified that he had experience detecting the smell of marijuana, the standard in *Moore* has been satisfied. *Tillman*, 2022-Ohio-4341 at ¶ 19. "The fact that illegal marijuana and legal forms of hemp have the same odor is irrelevant so long as some forms of marijuana remain illegal. Thus, *Moore* remains good law and any detection of the odor would give probable cause to search." *Tillman*, 2022-Ohio-4341 at ¶ 19 quoting *State v. Withrow*, 2022-Ohio-2850, 194 N.E.3d 804, ¶ 19.

{¶24} In the trial court's judgment entry, the trial court describes Speelman's demeanor as "extreme nervousness" and Speelman's "extreme nervousness" supported Trooper Kluever's decision to search the vehicle. Speelman contends this finding of fact

is against the manifest weight of the evidence. Trooper Kluever testified that Speelman appeared nervous; he was breathing heavily and shaking. The trial court appeared to summarize the words "nervous," "breathing heavily," and "shaking" into the descriptor of "extreme nervousness." We find the trial court's summarization not relevant to our determination that the detection of the odor of marijuana provides probable cause to search.

**Field Sobriety Tests**

{¶25} Speelman next contends the trial court erred in finding that Trooper Kluever had sufficient justification to expand the traffic stop to include field sobriety tests, and therefore those tests should be excluded. We disagree.

{¶26} In analyzing the facts presented, we accept the template set forth by the Supreme Court of Ohio in *State v. Batchili*, 113 Ohio St.3d 403, 2007–Ohio–2204, 865 N.E.2d 1282, paragraph two of the syllabus: "The 'reasonable and articulable' standard applied to a prolonged traffic stop encompasses the totality of the circumstances, and a court may not evaluate in isolation each articulated reason for the stop." The intrusion on the drivers' liberty resulting from a field sobriety test is minor, and the officer therefore need only have reasonable suspicion the driver is under the influence in order to conduct a field sobriety test. *State v. Horvath*, 5th Dist. Delaware No. 18 CAC 01 0006, 2018-Ohio-5379, 2018 WL 6921244, ¶ 26 citing *State v. Knox*, Greene App. No. 2005–CA–74, 2006–Ohio–3039. *See also, State v. Bright*, 5th Dist. Guernsey App. No. 2009–CA–28, 2010–Ohio–1111.

{¶27} A request made of a validly detained motorist to perform field sobriety tests is generally outside the scope of the original stop and must be separately justified by other

specific and articulable facts showing a reasonable basis for the request. *State v. Albaugh*, 5th Dist. Tuscarawas No. 2014 AP 11 0049, 2015–Ohio–3536, 2015 WL 5096900, ¶ 18.

{¶28} Trooper Kluever testified that he conducted field sobriety tests based on Speelman's traffic violation, Speelman's nervous demeanor, Speelman's red and bloodshot eyes, the marijuana smell emanating from the vehicle, the discovery of drug paraphernalia located on the center console of the car, and the discovery of two baggies of what appeared to be marijuana based on Trooper Kluever's training and experience after Speelman told him there were no drugs in the car. During the suppression hearing, Trooper Kluever testified that as of the date of the suppression hearing, testing was done that said the two baggies contained marijuana. (T. 14).

{¶29} Speelman cites this Court to *State v. Fitzgerald*, 2020-Ohio-4346, 158 N.E.3d 664 (9th Dist.) where the Ninth District held (with one judge concurring and one judge concurring in part and dissenting in part) there was not competent, credible evidence to show an officer had reasonable suspicion that the defendant was operating a vehicle under the influence of marijuana, necessary to detain him for field sobriety testing. In *Fitzgerald*, upon a valid traffic stop for speeding, the officer approached the car and noted the scent of raw, unburnt marijuana. The vehicle passenger "appeared stoned" and told the officer that he and the driver had smoked marijuana 30 minutes before being stopped. *Id.* at ¶ 11. The driver admitted to smoking marijuana earlier in the day, but the officer admitted that he did not observe any physical indications of impairment in the driver. *Id.* at ¶ 14. The trial court found that based on the totality of the circumstances, the officer had a reasonable articulable suspicion to detain the driver in order to conduct field

sobriety tests based on the smell of unburnt marijuana and the driver's admission of smoking marijuana. *Id.* at ¶ 15. The Ninth District reversed, holding the State did not produce enough competent, credible evidence to show that the officer possessed a reasonable suspicion, based on specific articulable facts, that the driver was operating his vehicle under the influence of marijuana, necessary to detain him in order to conduct field sobriety testing. *Id.* at ¶ 17. The court found that in cases of suspected alcohol impairment, the Ninth District has held that a mild odor of alcohol can provide a reasonable suspicion for field sobriety tests when paired with other factors such as a traffic infraction, bloodshot eyes, and an admission to having consumed alcohol. *Id.* at ¶ 16. The court reasoned there was no rational argument as to why reasonable suspicion to conduct field sobriety testing during an OVI investigation based on suspected marijuana impairment would require anything less. *Id.* at ¶ 16. In *Fitzgerald*, the court found the driver showed no physical indica of impairment, in conjunction with the odor of marijuana, therefore there was not enough competent, credible evidence to support the extension of the traffic stop to conduct field sobriety tests. *Id.*

{¶30} We do not find the facts of *Fitzgerald* to be applicable to the facts of this case. In this case, Trooper Kluever observed physical indications of impairment in Speelman – red and bloodshot eyes. Trooper Kluever also observed a traffic infraction, discovered drug paraphernalia in the vehicle, suspected baggies of marijuana in the vehicle, and smelled the odor of raw marijuana in the vehicle. Further, Speelman admitted that people from work had smoked marijuana in the vehicle and Speelman stated that he had been coming from work.

{¶31} Based on the totality of the circumstances and the record before us, we conclude there was competent, credible evidence to show that Trooper Kluever possessed a reasonable suspicion, based on specific articulable facts, that Speelman was operating his vehicle under the influence of marijuana, necessary to detain him in order to conduct field sobriety testing.

{¶32} Speelman's first and second Assignments of Error are overruled.

## CONCLUSION

{¶33} The judgment of the Ashland Municipal Court is affirmed.

By: Delaney, J.,

Wise, John, P.J. and

Baldwin, J., concur.