# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
CARROLL COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JOSEPH E. WITHROW,

Defendant-Appellant.

## OPINION AND JUDGMENT ENTRY
### Case No. 21 CA 0950

Criminal Appeal from the
Court of Common Pleas of Carroll County, Ohio
Case No. 2021 CR 6573

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, David A. D'Apolito, Judges.

**JUDGMENT:**
Reversed, Vacated and Remanded.

*Atty. Steven D. Barnett*, Carroll County Prosecutor and *Atty. Michael J. Roth*, Chief Assistant Prosecuting Attorney, 7 East Main Street, Carrollton, Ohio 44615, for Plaintiff-Appellee

*Atty. Stephen J. Kandel*, 20 Second Street S.E., Carrollton, Ohio 44615, for Defendant-Appellant.

Dated: August 8, 2022

**WAITE, J.**

**{¶1}** Appellant appeals a July 6, 2021 judgment entry in the Carroll County Court of Common Pleas convicting him on aggravated possession of methamphetamine. Appellant challenges the detention and search of his person following a traffic stop. Appellant also challenges his sentence, arguing that the Reagan Tokes Act is unconstitutional. For the reasons provided, Appellant's arguments concerning his conviction have merit, rendering his sentencing arguments moot. As such, the judgment of the trial court is reversed and the matter is remanded to allow the state the opportunity to proceed absent any statements made by Appellant pre-*Miranda* and without any evidence obtained from the search of Appellant's person following his admission to possession of marijuana.

Factual and Procedural History

**{¶2}** Appellant's conviction stems from information the Carroll County Sheriff's Department learned from a confidential informant. The department had never worked with the informant before, but he told them that he could purchase methamphetamine from a person who lived in Stark County but conducted his transactions in Carroll County. The target of this information was Appellant. Based on this, the informant called Appellant and made arrangements to purchase an ounce of methamphetamine.

**{¶3}** Appellant travelled to Carroll County in a blue Chevy Cavalier driven by Shane Foresha. Deputies knew Appellant was inside the vehicle when they initiated a traffic stop of the vehicle based on a burnt out headlight. It appears that Appellant was on his way to complete the sale of drugs to the informant before deputies initiated the traffic stop. Dep. Daniel Griffiths approached the vehicle and informed Foresha why he

had initiated the traffic stop. Foresha acknowledged the headlight was out, and explained that he had just been pulled over by another officer for the same reason. During the encounter Dep. Griffiths informed Foresha that he smelled marijuana inside the car, and Foresha admitted that he had a "marijuana bowl."

{¶4} Dep. Griffiths ordered both passengers to put down their phones and place their hands on the dashboard. Dep. Griffiths can be heard on a body camera video alerting dispatch that the target was sitting in the passenger seat, however it is unclear whether Appellant could hear this statement from his position. For recording purposes Dep. Griffiths stated "I'm talking to the passenger [Appellant]. You do everything that the deputy tells you to do or we're going to put you on the ground." (Griffith body camera video, 2:51.) Dep. Michael Campbell approached the passenger door and removed Appellant from the car.

{¶5} Once Appellant exited the vehicle, Dep. Campbell asked him the following questions: "You got nothing in your pockets that I need to know about? Nothing that's going to stab me, hurt me, poke me? Nothing like that?" (Campbell body camera video, :34.) Appellant initially responded "no," prompting Dep. Campbell to repeat "no?" Appellant then admitted that he had marijuana on his person. Dep. Campbell escorted Appellant to an area behind the vehicle, handcuffed him, and told him that he was not under arrest but was being detained. Dep. Campbell testified that, based on Appellant's admission, he believed he had probable cause to search his person for contraband. He concluded that prior to Appellant's admission, he did not have such probable cause.

{¶6} Although Dep. Campbell did not advise Appellant of his *Miranda* rights, he asked him a series of questions before and during the search. See *Miranda v. Arizona*,

384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). First, he asked: "nothing else is on you but the weed?" (Dep. Campbell body camera video, 1:37.) Dep. Campbell told Appellant that he intended to search every pocket and every crevice of his body, and gave him what he referred to as the chance for "honesty hour," an opportunity to admit that he possessed any contraband that might be found in a search.

{¶7} During the search, Dep. Campbell first located a glass pipe in what appears to be Appellant's pants pocket. The pipe contained residue that was later determined to be methamphetamine. When he removed the pipe from Appellant's pocket, the deputy asked Appellant what it was. Appellant responded that it was a methamphetamine pipe. The deputy responded by laughing and stating "that ain't weed." (Dep. Campbell body camera video, 2:25) Dep. Campbell specifically asked Appellant "is there any meth on you?" (Dep. Campbell body camera video, 2:31) Appellant responded in the negative. Dep. Campbell continued his search and discovered what appears to be a cloth satchel hanging from Appellant's neck and underneath his coat. Dep. Campbell did not seek a warrant before opening the bag and searching it. In the satchel, the deputy found several baggies containing a white powdery substance and $287. After stating "well, that's not weed," Dep. Campbell expressed his frustration with Appellant for not complying with his earlier request for "honesty hour." He then asked Appellant "what else is in the car?" Appellant responded that there was nothing in the car. Dep. Campbell cast doubt on that answer stating that there was "quite a bit here," and mentioned that there were three baggies in the satchel.

{¶8} Dep. Campbell told Appellant that he was taking Appellant to his cruiser but wanted to conduct another thorough search, first. This time, Dep. Campbell located

another baggie containing a white powdery substance. At this point, after the final search was conducted, Dep. Campbell for the first time advised Appellant of his *Miranda* rights. Following this advisement, Dep. Campbell asked Appellant what was inside the baggies and Appellant conceded that it was methamphetamine, but stated that he was not sure if all baggies contained the same substance.

{¶9} During a subsequent search of the vehicle, the deputies located two marijuana "bowls" mentioned by the driver, a bag of marijuana, and hypodermic needles. It is unclear whether any of these items were attributed to Appellant.

{¶10} On February 3, 2021, Appellant was indicted on one count of aggravated possession of methamphetamine, a felony of the second degree in violation of R.C. 2925.11(A); one count of possessing drug abuse instruments, a misdemeanor of the second degree in violation of R.C. 2925.12(A); and one count of drug paraphernalia offenses, a misdemeanor of the fourth degree in violation of R.C. 2925.14(C)(1). The record does not indicate whether Foresha was charged with any crimes related to the marijuana and other contraband in the vehicle.

{¶11} On March 10, 2021, Appellant filed a motion to suppress the evidence seized from his person. While the motion was pending, Appellant was arrested for a violation of his bond after he failed a random drug test. On June 8, 2021, the trial court denied the motion to suppress following a full evidentiary hearing.

{¶12} On July 1, 2021, Appellant pleaded no contest to the charge of aggravated possession of methamphetamine. The remaining charges were dismissed. On July 6, 2021, the trial court sentenced Appellant to an indefinite term of imprisonment with a

minimum of three years and a maximum term of four and a half years. It is from this entry that Appellant timely appeals.

## ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS AS THE ITEMS OBTAINED FROM THE SEARCH OF HIS PERSON WERE ELICITED IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

{¶13} Appellant presents three arguments challenging the trial court's decision to deny his motion to suppress. First, he argues that Dep. Griffiths did not establish that he is qualified to detect the odor of marijuana. Even so, Appellant argues that the legalization of hemp places questionable value on the applicable law, as both marijuana and hemp are from the same plant, yet only one is illegal. Second, Appellant argues that the odor of marijuana had been attributed only to Foresha. Third, Appellant argues that his admission to possession of marijuana when he exited the vehicle was the product of coercion and distress as a result of being ordered to exit the vehicle.

{¶14} In response, the state argues that the deputies properly initiated a traffic stop of the vehicle after observing a burnt-out headlight regardless of their subjective intent. The deputies also had reasonable suspicion to believe that Appellant was involved in drug activity based on information obtained by the confidential informant. The state

Case No. 21 CA 0950

argues that the search of Appellant's person was authorized as a search incident to a lawful arrest after he admitted to possessing a bag of marijuana.

{¶15} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution secure an individual's right to be free from unreasonable searches and seizures and require warrants to be particular and supported by probable cause." *State v. Telshaw*, 195 Ohio App.3d 596, 2011-Ohio-3373, 961 N.E.2d 223, ¶ 12 (7th Dist.). In order for a search or seizure to be lawful, probable cause must exist and the search or seizure must be executed pursuant to a warrant, unless an exception to the warrant requirement exists. *State v. Ward*, 7th Dist. Columbiana No. 10 CO 28, 2011-Ohio-3183, ¶ 33.

{¶16} Appellant argues that that there was no reason to order him out of the vehicle. However, we have recently underscored that "[d]uring a valid traffic stop, officers may order the occupants of a vehicle out of the vehicle pending completion of the stop without violating the Fourth Amendment." *State v. Davis*, 2020-Ohio-4821, 159 N.E.3d 1208, ¶ 17 (7th Dist.), citing *State v. Chapman*, 2019-Ohio-3339, 131 N.E.3d 1036, ¶ 37 (7th Dist.); *Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). We have "previously acknowledged the application of this rule to passengers of a vehicle even if the reason for the traffic stop is attributable only to the driver." *State v. Gay*, 7th Dist. Mahoning No. 20 MA 0085, 2021-Ohio-3308, ¶ 13, citing *State v. Koczwara*, 7th Dist. Mahoning No. 13 MA 149, 2014-Ohio-1946, ¶ 19; *Wilson*, 519 U.S. at 413-415, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).

{¶17} While Appellant claims that there was no reason to order him out of the vehicle, it is undisputed that the vehicle had a burnt-out headlight which gave the deputies

cause to initiate the traffic stop. Likewise, the driver's admission to possession of drug paraphernalia gave the deputies cause to order both persons out of the vehicle. Pursuant to *Davis* and *Gay,* the deputies were clearly permitted to order Appellant out of the vehicle even though he was the passenger.

{¶18} Appellant questions whether Dep. Griffiths established that he is qualified to detect the odor of marijuana. The Ohio Supreme Court has held that "the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement. There need be no other tangible evidence to justify a warrantless search of a vehicle." *State v. Moore*, 90 Ohio St.3d 47, 48, 734 N.E.2d 804 (2000).

{¶19} At the suppression hearing, Dep. Griffiths testified that he has experience detecting the odor of marijuana and has "been to drug confiscations where they have um…burned marijuana." (5/25/21 Hrg. Tr., p. 11.) He also explained that he has been exposed to the odor throughout his eight-year career. Because Dep. Griffiths testified that he had experience detecting the smell of marijuana, the standard in *Moore* has been satisfied. The fact that illegal marijuana and legal forms of hemp have the same odor is irrelevant so long as some forms of marijuana remain illegal. Thus, *Moore* remains good law and any detection of the odor would give probable cause to search.

{¶20} The timeline of events is somewhat confusing in this matter. Despite the fact that Appellant was apparently on his way to conduct a drug transaction and the deputies had knowledge of this fact, inexplicably they decided to initiate a traffic stop before Appellant reached the buy location. Dep. Campbell admitted that at the point he ordered Appellant out of the vehicle, he did not have probable cause to conduct a search

of his person.  He believed that he gained probable cause shortly after Appellant exited the vehicle and made his admission to possession of marijuana.

**{¶21}** However, the discovery of the evidence in this matter is problematic not because of typical search and seizure violations.  Instead, the problem in this case is that the evidence was obtained as a result of the deputy questioning their suspect, Appellant, prior to advising him of his *Miranda* rights.  The first instance occurred when Dep. Campbell asked what on its face may appear to be an innocent question:  "[y]ou got nothing in your pockets that I need to know about?  Nothing that's going to stab me, hurt me, poke me?  Nothing like that?" (Campbell body camera video, :34.)  At the time these questions were asked, the deputy had removed the passenger from a vehicle, and so was permitted to perform a "patdown" for officer safety, but at this stage, he was permitted only a patdown.

**{¶22}** A patdown for weapons "must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby, and may realistically be characterized as something less than a 'full' search, even though it remains a serious intrusion."  *Terry v. Ohio*, 392 U.S. 1, 26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889 (1968).

**{¶23}** The United States Supreme Court has held that:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband,

its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

*Minnesota v. Dickerson*, 508 U.S. 366, 375-376, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). The *Dickerson* Court went on to hold that the manipulation of the suspect's pocket beyond the sense of touch permitted (placing hands on the outer clothing) is a violation of *Terry* and becomes a full-blown search. *Id.* at 378-379.

{¶24} Dep. Campbell's questions here clearly indicated that he intended a full search of Appellant, including his pockets, as part of the "patdown." This is clear from his questions regarding objects *inside Appellant's pockets.* The law authorized the deputy to run his hands over Appellant's clothing to search for weapons. Thus, the deputies' questions that clearly indicated he intended to place his hands inside Appellant's pockets transforms the "patdown" to provide safety from a possibly armed person into the functional equivalent to a full-blown search.

{¶25} At the time the questions had been asked, the parties agree that Appellant had not been advised of his *Miranda* rights. Dep. Campbell's compound question can only be lawful it if falls under the public safety exception, which allows law enforcement to ask questions without providing *Miranda* warnings where there is a threat to officer safety or public safety.

{¶26} After Appellant exited the vehicle, Dep. Campbell immediately asked "[y]ou got nothing in your pockets that I need to know about? Nothing that's going to stab me, hurt me, poke me? Nothing like that?" (Dep. Campbell's body camera video, :34.) Appellant initially responded "no," prompting the deputy to repeat "no?" Appellant then stated that he had a bag of marijuana on his person. The threshold question is whether

the deputy's questioning amounts to a violation of *Miranda* or whether it falls within the public safety exception.

{¶27} In support of his argument, Appellant cites to *State v. Strozier*, 172 Ohio App.3d 780, 2007-Ohio-4575, 876 N.E.2d 1304 (2d Dist.). In *Strozier,* officers observed a vehicle driving erratically and learned that it had been reported as stolen. The vehicle stopped in front of a house and the appellant, who was one of three occupants, exited. Officers activated their emergency lights and ordered the appellant back into the vehicle. Officers then ordered the driver to turn off the vehicle's engine and toss the keys out the window. Then, officers ordered all three passengers out of the vehicle and instructed them to lie on the ground. One of the officers handcuffed the appellant. Before conducting a patdown search, the officer asked him "anything on [you] I need to know about? Anything that might stick me?" *Id.* at ¶ 7. The appellant responded that he had a plastic bag with some "brown stuff" in it. The bag was removed and was determined to contain heroin.

{¶28} On appeal, the parties disagreed as to whether the officer's question fell within the public safety exception to the *Miranda* rule. The state argued that the officer testified he was concerned he might encounter a needle or sharp object that might injure him during a search. The *Strozier* court disagreed with the state and found that the first part of the officer's question, regarding whether the appellant had anything in his pockets that he needed to know about, was a leading question that was likely to elicit an incriminating response. Regardless of the officer's intent, the court reasoned that the officer should have known this question would likely be interpreted as asking whether the defendant had anything illegal in his pockets. The court explained that an interrogation

includes not only express questions but also "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at ¶ 20, citing *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

**{¶29}** The court reviewed whether the question fell within the public safety exception to the *Miranda* rule. As explained by the court, the public safety exception applies to questions asked by law enforcement that are "reasonably prompted by a concern for the public safety." *Id.* at ¶ 23 citing *New York v. Quarles*, 467 U.S. 649, 656, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984). "In other words, [t]he public safety exception allows the police, under certain circumstances, to temporarily forgo advising a suspect of his *Miranda* rights in order to ask questions necessary to securing their own immediate safety or the public's safety." *Id.,* citing *State v. Santiago*, 9th Dist. Lorain No. 01CA007798, 2002 WL 388901 (Mar. 13, 2002).

**{¶30}** While the *Strozier* court agreed that being stuck by a needle during a search was a legitimate safety concern, the court determined that the questioning of these officers was not narrowly tailored to address only a concern for needles because the first part of the question was open ended and likely to elicit an incriminating response. *Id.* at ¶ 28. As such, the evidence obtained during the search was suppressed.

**{¶31}** In the instant case, the state did not address *Strozier*. In addition, neither party raised the Ohio Supreme Court case that abrogated the *Strozier* holding, *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930. In *Maxwell,* officers entered a private residence and found the appellant hiding in a crawl space. Officers handcuffed

the appellant and asked him whether he was armed, to which the appellant replied that he "did not have a gun anymore." *Id.* at ¶ 111. As the officers conducted a patdown, the appellant stated that he "had gotten rid of the gun he once had." *Id.*

**{¶32}** On appeal, the issue was whether the two statements made by the appellant were made following a violation of his *Miranda* rights and, if so, whether the public safety exception applied. The state argued that the officer had reason to believe that the appellant had or recently had access to a weapon. The *Maxwell* Court did not directly address *Strozier* but adopted law from the Sixth Circuit, *United States v. Kellogg*, 306 Fed.Appx. 916 (6th Cir.2009).

**{¶33}** The *Kellogg* Court held that in order to find an officer had a reasonable belief that he was in danger: "he must have reason to believe (1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it." *Maxwell* at ¶ 117, citing *Kellogg* at 428. This test "takes into consideration a number of factors, which may include the known history and characteristics of the suspect, the known facts and circumstances of the alleged crime, and the facts and circumstances confronted by the officer when he undertakes the arrest." *Id.*

**{¶34}** In applying *Kellogg,* the *Maxwell* Court held that although the officers may have held a reasonable belief that the appellant possessed a weapon at some point, at the time of the questioning and patdown, the appellant was handcuffed and the officers had cleared the house after a protective search, hence there was no reason to believe that the appellant or anyone else might gain access to such a weapon. *Id.* at ¶ 118.

{¶35} The court also analyzed the two statements made by the appellant. The first statement, that "he did not have a gun anymore," was deemed to be a direct response to the officer's question. As to the second statement that "he got rid of the gun he once had," the *Maxwell* Court applied law from this Court's opinion in *State v. Clark*, 7th Dist. Mahoning No. 08MA15, 2009-Ohio-3328. *Clark* provides that "[i]n determining whether one statement is a continuation of the next statement, the court is to consider factors such as whether there is overlapping content in the statements, the timing and setting of each statement, and the continuity of personnel." *Id.* at ¶ 24. In applying *Clark*, the Supreme Court in *Maxwell* held that both statements were inadmissible. As to the second statement that he had gotten "rid of" the gun, the court found that the statement was made seconds after the first statement, addressed the same matter, and was made to the same officers. However, the Court determined that the improper admission of these statements was harmless error in light of the significant evidence in that case, including statements admitting guilt to witnesses and an eyewitness to the incident itself.

{¶36} The Eleventh District later addressed the public safety exception, discussing both *Strozier* and *Maxwell.* See *State v. Ferrell,* 2017-Ohio-9341, 91 N.E.3d 766 (11th Dist.). In *Ferrell,* prior to conducting a patdown, officers asked the appellant: "got anything in your pockets? * * * anything illegal? Sharp? Needles? Knives?" *Id.* at ¶ 15. The appellant responded no to each question but during the search, officers located suspected drugs in his sock and began to question him about needles, to which he finally admitted possession.

{¶37} The *Ferrell* court held that the appellant was in custody at the time of the search based on the totality of the circumstances. The court emphasized that he did not

make any admissions until after he was handcuffed and had been asked three times whether he had needles on his person. Acknowledging that *Strozier* no longer applies, the court in *Ferrell* determined that the public safety exception did not apply based on a *Maxwell* analysis. As to the first prong, the court determined that there was no testimony or other evidence to suggest that the appellant was armed. On the second prong, there was likewise no evidence that someone other than law enforcement could gain access to a weapon. *Id.* at ¶ 46.

{¶38} Turning to the matter at bar, the deputy asked "[y]ou got nothing in your pockets that I need to know about? Nothing that's going to stab me, hurt me, poke me? Nothing like that?" (Dep. Campbell's body camera video, :34.) Dep. Campbell's question is similar to the officer in *Frazier*, where the officer asked "got anything in your pockets? * * * anything illegal? Sharp? Needles? Knives?" *Id.* at ¶ 15. As in *Strozier* and *Frazier,* this is a compound question. The first part of the question is vague, and generally asks the suspect if he had anything in his pockets, which could be construed to include all objects ranging from chewing gum to weapons or illegal drugs. The second question is more direct, and specifically inquires about objects that could cause the officer physical harm.

{¶39} Under the first prong of *Maxwell,* we must look to whether the deputies had reason to believe (1) that Appellant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon. Through the confidential informant, the police lured Appellant to the area by means of a controlled drug buy from Appellant. While firearms are certainly present during some drug transactions, there is nothing within this record to suggest that Appellant was, or could

expect to be, armed. There is also nothing to suggest that Appellant owned or had access to a weapon, or had a history of using weapons during drug deals. In fact, there is nothing in the record more specific than that Appellant was known to the informant to be a drug dealer and the officers learned through their research that Appellant had been convicted of a drug trafficking offense in the past.

{¶40} As to the second prong, even if a weapon had been present, both Appellant and Foresha had been removed from the car at the time of the questioning and the deputies immediately handcuffed Foresha on his exit from the vehicle. Thus, neither person had access to a weapon that may have been located inside the vehicle. After the detective's first compound question that was vague and overbroad, he persisted in this questioning after getting a negative response. This questioning continued even with no indication Appellant may have possessed a weapon, pursuant to *Maxwell*; accordingly, the public safety exception does not apply. Det. Campbell's compound questioning only appears directed at getting an admission by Appellant that he had drugs on his person and suggesting a more thorough search was about to ensue. Based on the facts in this record, this questioning amounts to a violation of *Miranda.*

{¶41} Before we proceed to the issue of whether Appellant was then placed in custody for *Miranda* purposes, we must analyze several other relevant statements. Shortly after Appellant admitted to possession of marijuana, Dep. Campbell escorted him to an area behind the vehicle and handcuffed him. He then asked Appellant "nothing else is on you but the weed?" (Dep. Campbell body camera video, 1:37.) Appellant responded in the negative. This was the second question designed to elicit an incriminating response without a *Miranda* advisement. Dep. Campbell followed up, stating, "alright well since

you got the weed on you, I'm checking every pocket, every crevice in you right now, there's nothing else on you? Nothing in the car? * * * So, we toss the car, I go through your pockets, there isn't going to be anything on you? This is honesty hour right now, alright?" (Dep. Campbell body camera video, 1:37.) Appellant responded that he did not have anything else on his person. This was the third question clearly designed to elicit an incriminating response without *Miranda* advisement.

**{¶42}** During his search, Dep. Campbell discovered a pipe in one of Appellant's pockets and asked "what's this?" (Dep. Campbell body camera video, 2:20.) Appellant responded that it was a methamphetamine pipe and that he had forgotten it was in his pocket. The deputy responded by laughing and stating, "that ain't weed." (Dep. Campbell body camera video, 2:25) This was Appellant's fourth incriminating response without benefit of advisement of his rights pursuant to *Miranda*. Dep. Campbell then specifically asked Appellant "is there any meth on you?" (Dep. Campbell body camera video, 2:31) Appellant responded "no." This is the fifth question prior to a *Miranda* advisement. He asked Appellant "what else is in the car?" Appellant responded that there was nothing in the car. This was the sixth question asked without *Miranda* advisement. It was not until another more thorough search of Appellant's person revealed another baggie containing a white powdery substance that Dep. Campbell finally advised Appellant of his *Miranda* rights.

**{¶43}** As Appellant was asked several questions after being handcuffed without first being advised of his *Miranda* rights, we must determine at what point Appellant was in custody for *Miranda* purposes. We have previously acknowledged that "[a] motorist temporarily detained as the subject of an ordinary traffic stop is not 'in custody' for

purposes of *Miranda*." *State v. Leffler*, 7th Dist. Columbiana No. 18 CO 0032, 2019-Ohio-3964, ¶ 26, *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, ¶ 13; *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138 (1984).

**{¶44}** If the motorist "thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*." *Leffler* at ¶ 26, citing *Farris* at 13; *Berkemer* at 440. "The 'only relevant inquiry' in determining whether a person is in custody is 'how a reasonable man in the suspect's position would have understood his situation.' " *Id.,* citing *Farris* at ¶ 14; *Berkemer* at 442.

**{¶45}** A relevant factor to consider in determining whether a person is in custody for *Miranda* purposes is whether the subject was handcuffed at the time of the statement. Appellant was not handcuffed in this matter until after making his first statement where the officer's compound question elicited a response from Appellant that he possessed marijuana. Another relevant factor concerns how many officers are present. It appears from the body camera videos that three deputies were on the scene in this case. Also relevant is how many times a suspect is asked a specific question. The record reveals at least six questions designed to elicit an incriminating response before Appellant was advised of his *Miranda* rights.

**{¶46}** Additionally, there is little question that Appellant was not free to leave the scene. Immediately after Foresha's admission, Dep. Griffiths ordered both passengers to place their hands on the steering wheel or dashboard. While Appellant was still inside the vehicle, he was advised "I'm talking to the passenger, ok? This deputy is going to open the door and you do everything that he tells you to do or we are going to put you on

the ground, understand?" (Dep. Griffiths body camera video, 2:48) We note that Foresha did not receive a similar warning when he was removed from the vehicle, despite the fact that he was the only passenger who admitted to possession of contraband at that time. The threat of the deputies to "put [him] on the ground" certainly conveys that Appellant was not free to leave. Once he exited the vehicle, he was immediately asked the compound question as to whether he had anything on his person. After his admission, the deputy escorted him to an area behind the vehicle and handcuffed him, but stated "I'm just going to go ahead and cuff you for right now, okay? [inaudible] You are not under arrest, you're being detained." (Campbell body camera video, :56.)

**{¶47}** Based on the totality of these circumstances, it is readily apparent that Appellant, in fact, was in custody at the time the deputy asked his questions. Despite this, Appellant was not advised of his *Miranda* rights until after all of the contraband had been found and at the point where he had already made several incriminating responses to questions asked by Dep. Campbell.

**{¶48}** The state relies on the search incident to a lawful arrest exception to the warrant requirement to justify the discovery of the contraband on Appellant's person. In Ohio, there are seven recognized exceptions to the warrant requirement: (1) a search incident to a lawful arrest, (2) consent, (3) the stop-and-frisk doctrine, (4) hot pursuit, (5) probable cause plus the presence of exigent circumstances, (6) the plain view doctrine, and (7) administrative searches. *State v. McGee*, 2013-Ohio-4165, 996 N.E.2d 1048, ¶ 17 (7th Dist.), citing *State v. Akron Airport Post No. 8975*, 19 Ohio St.3d 49, 51, 482 N.E.2d 606 (1985).

Case No. 21 CA 0950

**{¶49}** A search conducted incident to a lawful arrest "has two rationales:  officer safety and 'safeguarding evidence that the arrestee might conceal or destroy.' "  *State v. Zepernick*, 7th Dist. Columbiana No. 20 CO 0008, 2021-Ohio-719, ¶ 14, citing *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 16; *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 182, citing *Arizona v. Gant*, 556 U.S. 332, 338-339, 129 S.Ct. 1710 (2009).

*{¶50}* The exception relies on a lawful arrest, which first requires the existence of probable cause.  *Zepernick* at ¶ 15, citing *State v. Robinson*, 9th Dist. Wayne No. 10CA0022, 2012-Ohio-2428.  Probable cause for an arrest exists where "the facts and circumstances known to the officer warrant a prudent man in believing the offense has been committed."  *Zepernick* at ¶ 15, citing *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 73; *Henry v. United States*, 361 U.S. 98, 102, 80 S.Ct. 168 (1959).

**{¶51}** While the state also argues that the search was valid because Appellant's admission gave them probable cause to search his person, we have determined that admission was the product of a *Miranda* violation.  Even if it were not, the record is questionable regarding the actual point at which Appellant was arrested.

**{¶52}** We recognize that a search incident to a lawful arrest "need not necessarily be conducted at the moment of arrest."  *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949, ¶ 12.  The United States Supreme Court has held that "searches and seizures that could be made on the spot at the time of the arrest may legally be conducted later when the accused arrives at the place of detention."  *Id.,* citing *United States v. Edwards*, 415 U.S. 800, 803, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974).

Case No. 21 CA 0950

**{¶53}** We have previously acknowledged that "the United States Supreme Court has held that the actual arrest need not precede the search, as long as the arrest 'followed quickly on the heels of the challenged search of petitioner's person,' and the fruits of the search are not used to support probable cause for the arrest." *State v. Smith*, 7th Dist. Columbiana No. 20 CO 0022, 2021-Ohio-3330, ¶ 73, citing *Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). The critical factor is not whether an arrest has been effectuated, but whether probable cause existed to support an arrest prior to the search and whether the arrest followed the search without delay. *Rawlings* at 111.

**{¶54}** After Appellant made his initial admission about marijuana possession, Dep. Campbell escorted him to an area behind the vehicle, handcuffed him and stated: "I'm just going to go ahead and cuff you for right now, okay? You are not under arrest, you're being detained." (Campbell body camera video, :56.) The arguments based on the deputies' actions at this point are somewhat confusing. First, as he handcuffed Appellant, Dep. Campbell advised him that he was not under arrest but was being detained. This is at odds with the state's argument that the search that immediately followed was incident to a lawful arrest. If the deputy did, indeed, have probable cause at this juncture, he should have clearly arrested Appellant or sought a search warrant at this point. By his own words, he did not. This was not a case where the deputy simply failed to advise Appellant that he was under arrest. This deputy specifically told Appellant that he was not under arrest and was being temporarily handcuffed and detained before proceeding to search his person.

Case No. 21 CA 0950

**{¶55}** This fact is even more significant when looking at the actions of the deputy when he discovered Appellant's satchel. Again, the satchel was located during the search and before the deputy advised Appellant of his *Miranda* rights. The cloth-like satchel was hanging from around Appellant's neck and underneath his coat. The satchel was closed, zipped and fastened shut with Velcro. The deputy did not obtain Appellant's consent to open the satchel and did not attempt to seek a warrant. Again, Appellant was handcuffed at this point. Instead, he opened the satchel while it was still around Appellant's neck and used his flashlight to look inside. On finding what appears to be contraband he removed the satchel from Appellant's neck.

**{¶56}** This satchel is akin to a purse. Under these circumstances, the police would have required a warrant to search. See *State v. Banks-Harvey,* 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262 (the search of a purse must be conducted pursuant to a warrant, or an exception to the warrant requirement must apply.)

**{¶57}** Because the deputy violated *Miranda* in obtaining the initial statements from Appellant and the deputy relies on these statements for his probable cause, and the search of the satchel was done without a warrant and absent an applicable search warrant exception, all evidence, whether verbal or physical, obtained from the moment Dep. Campbell asked his first question is inadmissible in this case. As such, Appellant's first assignment of error has merit and is sustained.

ASSIGNMENT OF ERROR NO. 2

THE MODIFICATIONS TO SENTENCING FOR FIRST AND SECOND DEGREE FELONIES MADE BY THE REAGAN TOKES ACT VIOLATE THE APPELLANT'S RIGHT TO JURY TIRAL [SIC], AS PROTECTED BY

THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND THE SEPARATION OF POWERS DOCTRINE EMBEDDED IN THE OHIO CONSTITUTION.

{¶58} Appellant argues that the Reagan Tokes Act is unconstitutional, as a defendant's sentence can be extended at an administrative proceeding that does not guarantee the defendant his right to counsel and does not provide other due process rights. However, our decision in Appellant's first assignment to reverse, vacate Appellant's conviction and sentence and remand to the trial court, we need not address Appellant arguments concerning his sentence.

{¶59} Because Appellant's first assignment has merit, this assignment of error is moot.

Conclusion

{¶60} Appellant challenges the circumstances surrounding the traffic stop of the vehicle in which he was a passenger and the subsequent detention and search of his person. Appellant also challenges his sentence, arguing that the Reagan Tokes Act is unconstitutional. For the reasons provided, it appears that Appellant's arguments concerning his conviction have merit, rendering his sentencing arguments moot. As such, the judgment of the trial court is reversed, Appellant's conviction and sentence are vacated, and the matter is remanded to allow the state the opportunity to proceed without any of the statements made by Appellant pre-*Miranda* or any of the evidence obtained from the search of Appellant's person after his admission to possession of marijuana.

Robb, J., concurs.

D'Apolito, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, Appellant's first assignment of error is sustained and his second assignment is moot. It is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Carroll County, Ohio, is reversed. Appellant's conviction and sentence are vacated. We hereby remand this matter to the trial court for further proceedings according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**