**[Cite as *State v. Matics*, 2025-Ohio-1588.]**

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | | JUDGES: |
| | : | | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | | Hon. Robert G. Montgomery, J. |
| | : | | Hon. David W. Gormley, J. |
| -vs- | : | | |
| | : | | |
| JAMES MATICS, | : | | Case No. 24CA000031 |
| | : | | |
| Defendant - Appellant | : | | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Guernsey County
Court of Common Pleas, Case No.
21-CR-286

JUDGMENT: Affirm

DATE OF JUDGMENT: May 1, 2025

APPEARANCES:

For Plaintiff-Appellant

TODD W. BARSTOW
14 North Park Place
Newark, OH 43055

For Defendant-Appellee

MARK A. PERLAKY
Guernsey County Assistant
Prosecuting Attorney
627 Wheeling Avenue
Cambridge, OH 43725

*Montgomery, J.*

## STATEMENT OF THE CASE

**{¶1}** On September 9, 2021, Appellant was indicted by the Guernsey County Grand Jury on one count of Aggravated Possession of Drugs, a third-degree felony. On August 4, 2022, Appellant filed a motion to suppress arguing that Officer Gombeda exceeded the scope of a lawful detention in retrieving Appellant's wallet from his pants pocket and searching it. The discovery of drugs in the wallet led to additional searches and discovery of more drugs, such that Appellant argued all of it was the fruit of the poisonous tree. On September 30, 2022, after a full evidentiary hearing, the trial court denied the motion and found the search was incident to a lawful arrest. On June 4, 2024, Appellant pled no contest to the Aggravated Possession of Drugs charge. Appellant was sentenced to 18 months in prison, to be served consecutive with sentences for drug charges in two additional counties.

## STATEMENT OF RELEVANT FACTS

**{¶2}** On March 20, 2021, around 1:00 a.m., Officer Gombeda was in a marked police cruiser and initiated a traffic stop after Appellant passed Gombeda in his car with a loud and defective exhaust. Appellant was the driver of the vehicle and there was a female passenger. Gombeda, who was wearing a body cam, approached the vehicle and asked for Appellant's information. Neither occupant had a valid driver's license. Appellant gave Gombeda his name and social security number, because Appellant did not have any other form of identification. Dispatch quickly notified Gombeda that both individuals had outstanding warrants for their arrest. In fact, Appellant had *two* outstanding warrants - one from Stark County and one from Summit County. Gombeda

testified he decided to detain Appellant while waiting to see if he was within the "pickup radius" set forth in one or both warrants; Gombeda explained that some warrants have a nationwide radius, others are statewide, and still others are local, encompassing the county of issue or adjoining counties.

{¶3} Patrolman Smith arrived on scene to assist with the stop. Smith addressed the female passenger while Gombeda continued to address Appellant. Dispatch advised that the female passenger was possibly armed and dangerous. Gombeda instructed Appellant out of his vehicle and asked if Appellant had anything on him that would poke or hurt him when Gombeda conducted a pat-down. Appellant replied no, but stated he did have his wallet. The following testimony took place:

Q. Okay. Since you didn't immediately have the information about whether he was in the pick-up radius, what did you do next?

A. At that time I had [Appellant] step out of the vehicle * * * and I conducted a pat-down of weapons. Do you want me to keep going?

Q. Well, I just kind of want to know is that - - is that your typical procedure in that instance?

A. Yeah. So with him having a warrant for his arrest, * * * typically, what I do, I have them step out. I have them keep their arms up. I don't know if they have anything on them. I'll check and make sure they have no weapons. And then at that time, I'll detain them and then go from there.

Q. So, in this instance, did you do a pat-down to check for weapons, or is there any other reason that you're for (sic) doing that?

A.      So my pat-down was for weapons or anything that might poke, stick, or hurt me or anyone else.

Tr. pp. 16-17.

**{¶4}**     Gombeda asked Appellant if there was anything in his wallet he should not have; Appellant replied, "No Yeah No." Gombeda requested consent to search his wallet. Defendant replied, 'No.' Gombeda testified that in his experience, "just - - because it's a wallet doesn't mean you can't hide illegal contraband, knives, or anything else in it." Tr. at p. 17.   Gombeda further explained that drugs, such as fentanyl, can be hidden in a wallet and overdose can occur from mere exposure to fentanyl, without even touching it. Tr., pp. 22-23.   After refusing consent, Gombeda handcuffed Appellant, advised him that he was being detained while dispatch verified the warrants, and told him he was going to check any other items in case Appellant would be going to jail on the outstanding warrants.   To this point, defense counsel asked:

Q.      Now, there's a difference between arresting somebody and detaining them, isn't there?

A.      Yes.

Q.      And you were going to - - you didn't want him leaving.  You wanted him to stick around until you could find out about the pick-up radius for those warrants.

A.      Correct.

Q.      All right. And I think you said you're going to be detained because you have warrants for your arrest till we verify for pick-up, do you understand?

A.     Yes.

Q.     And you went on to say you're - - so you're being detained right now until we can verify your warrant.

A.     Yes.

See Tr. pp. 24-28.

{¶5}   Gombeda did not say "you're under arrest," but testified Appellant was not free to leave the situation at any point in time.  Next, Gombeda removed Appellant's wallet from his right-side pocket, opened the wallet and saw what appeared to be illegal narcotics.   Appellant told Gombeda it was methamphetamines. Gombeda then Mirandized Appellant and conducted a more thorough search of his person, locating several baggies of suspected narcotics in Appellant's short pockets that he wore under his pants.  A K9 unit was dispatched to the scene. The dog alerted to the presence of narcotics in the vehicle as well.   Shortly thereafter, dispatch informed Gombeda the warrants were outside his pickup radius.  Gombeda issued a citation for driving under suspension, a first-degree misdemeanor, and a date to appear in Cambridge Municipal Court and left Appellant's vehicle on the side of the road to be picked up later.  Gombeda testified that although he only cited Appellant for driving under suspension, he could have arrested him for that offense.  Tr. p. 35-36. ("So you could have arrested him for that offense on that night as well.  Yes, I could have.").

{¶6}   After the evidentiary hearing, the trial court issued its Findings of Fact and Conclusions of Law denying Appellant's motion to suppress.  The trial court concluded "that a search incident to arrest need not be supported by independent probable cause to believe the arrestee has a weapon or evidence of a crime on his person. The right to

conduct the search flows automatically from the arrest. See *State v. Griffin,* 133 Ohio App.3d 490 (6th Dist. 1999)". Further, "the Court finds that in this case, the search was a valid search incident to lawful arrest. The Court further finds that it was only later that Gombeda found out that the warrant was outside the pickup radius. See also *State v Loeffler,* 2006-0hio-5215 (5th Dist)." See Decision, pp. 1-2.

## SOLE ASSIGNMENT OF ERROR

**{¶7}** "I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE."

## STANDARD OF REVIEW

**{¶8}** "Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact." *State v. Durosko*, 2020-Ohio-3133, ¶ 15, citing *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). The trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *Durosko*, ¶ 15, citing *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact when supported by competent, credible evidence. *Durosko,* ¶ 15, citing *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). The appellate court must then independently determine as a matter of law, whether the facts meet the applicable legal standard. *Durosko,* ¶ 15. Here, Appellant does not dispute the facts but challenges the trial court's legal conclusion. Thus, we must determine whether the facts meet the appropriate legal standard.

**{¶9}** Regarding warrantless searches and seizures, the state generally bears the burden of establishing that the search or seizure in question falls within one of the exceptions to the warrant requirement, *Xenia v. Wallace* (1988), 37 Ohio St.3d 216,

paragraph two of the syllabus; *State v. Kessler* (1978), 53 Ohio St.2d 204, 207, and that it meets Fourth Amendment standards of reasonableness. *Maumee v. Weisner*, 87 Ohio St.3d 295, 297 (1999); *State v. Grubb*, 2010-Ohio-1265, ¶ 15.

{¶10} On appeal, Appellant admits that Gombeda had probable cause to conduct a traffic stop for a loud and defective muffler but claims Gombeda improperly extended the traffic stop. Appellant claims this was an investigative detention and Gombeda improperly searched Appellant's wallet without reasonable and articulable suspicion. On the other hand, the State maintains that because Appellant had two outstanding warrants for his arrest, the trial court properly concluded that Gombeda's pat-down and wallet search was a "search incident to a lawful arrest."

## ANALYSIS

{¶11} The Fourth Amendment to the United States Constitution protects persons from unreasonable searches and seizures and imposes a reasonableness standard upon government officials who must exercise discretion. *Delaware v. Prouse*, 440 U.S. 648, 653–654 (1979). Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests. *Id.* "When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure", unless the good faith exception applies. *State v. Johnson*, 48 Ohio App.3d 256, 259 (1988), citing *Illinois v. Krull*, 480 U.S. 340, 347 (1987). Importantly however, evidence obtained in *the reasonable, good-faith belief* that a search or seizure was in accord with the Fourth Amendment should not be excluded.

## Police Encounters Generally

{¶12} Ohio law recognizes three types of police-citizen encounters: consensual encounters, investigative detentions (also known as *Terry* stops), and formal arrests. State v. *Berry*, 2018-Ohio-4791, ¶¶ 21-22 (5th Dist.), citing *State v. Taylor*, 106 Ohio App.3d 741, 747-49, (1995). A consensual encounter occurs when a police officer approaches a person in a public place, engages the person in conversation, requests information, and the person is free to refuse to answer and walk away. *Id*. at 748. An initial consensual encounter can turn into an investigative detention. *Id.* An investigatory detention is more intrusive than a consensual one, but less intrusive than a formal arrest. *Berry*, ¶ 25. The investigative detention is limited in both duration and purpose and may only last as long as it takes an officer to either confirm or dispel the officer's suspicions. *Id.*, citing *Taylor*, supra at 748.

{¶13} An investigative detention is valid if the officer had "reasonable and articulable" suspicions of criminal activity. *Id.* at 749. The police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion". *Berry,* ¶ 25; *State v. Hudson*, 2004-Ohio-3140, ¶ 17 (stating "[o]nce a police officer legitimately stops a vehicle for a traffic violation, the driver may be detained for only as long as the officer continues to have reasonable suspicion that there has been a violation of the law").

{¶14} Once an officer has lawfully detained an individual, the officer may search for weapons by conducting a pat-down of the suspect, commonly known as a *Terry* pat-down or *Terry* frisk. *State v. Evans,* 67 Ohio St.3d 405, 414. The scope of a *Terry* pat-

down is narrow and permits an officer "to conduct a reasonable search for weapons for the protection of a police officer, regardless of whether he has probable cause to arrest the individual for a crime". *Terry,* 392 U.S. at 27. Because a *Terry* pat-down is limited to discovering weapons, it "cannot be employed * * * to search for evidence of a crime". *Evans,* 67 Ohio St.3d at 414, 618 N.E.2d 162. A *Terry* search must "be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer". *Terry,* 392 U.S. at 29; *State v. Scasny*, 2004-Ohio-4918, ¶¶ 10-12, ¶ 15 (even if a *Terry* frisk was appropriate, there is no evidence that Officer Gray felt any contraband in defendant's wallet to justify its opening).

**{¶15}** The third and final category of police-citizen interaction is a seizure equivalent to an arrest. An arrest must be based on probable cause. *See generally State v. Hoffman*, 2014-Ohio-4795, ¶¶ 11-12 (holding that both the United States and Ohio Constitutions require probable cause for an arrest warrant to issue); *Centerville v. Reno*, 2003-Ohio-3779, ¶ 16 (2d Dist.). ("A defendant has a constitutional right to a finding of probable cause before a warrant or summons is issued for him to answer."); *State v. Fraley,* 2020-Ohio-3763, ¶ 15. Probable cause is generally defined as a reasonable ground for suspicion supported by facts and circumstances sufficiently strong to warrant a prudent person to believe that an accused person has committed an offense. *State v. Moore*, 2011-Ohio-4908, ¶ 38 (12th Dist.).

**{¶16}** "A seizure is equivalent to an arrest when: (1) there is an intent to arrest; (2) under real or pretended authority; (3) accompanied by an actual or constructive seizure or detention; and (4) which is so understood by the person arrested." *State v. Taylor*, 163 Ohio App.3d 741, 749, citing *State v. Barker,* 53 Ohio St.2d 135 (1978), syllabus. "A

warrantless arrest that is based upon probable cause and occurs in a public place does not violate the Fourth Amendment." *State v. Brown,* 2007-Ohio-4837, ¶ 66, citing *United States v. Watson,* 423 U.S. 411 (1976); *State v. Terry*, 5 Ohio App.2d 122, 128 (1966); *Draper v United States*, 358 US 307, 314 (finding probable cause for an arrest exists where the facts and circumstances within an arresting officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in belief that an offense has been or is being committed).

## Warrantless Searches and Seizures

**{¶17}** Generally, searches conducted without a warrant based on probable cause are per se unreasonable *unless* an exception exists. *State v. Withrow*, 2022-Ohio-2850, ¶ 15. Numerous and well-established exceptions exist to the warrant requirement. *State v. Smith*, 2009-Ohio-6426, ¶ 10, citing *Jones v. United States*, 357 U.S. 493, 499 (1958). Some exceptions include the "search incident to arrest" exception, *Chimel v. California*, 395 U.S. 752 (1969), the automobile exception,[1] *United States v. Ross*, 456 U.S. 798 (1982); *State v. Mesa*, 87 Ohio St.3d 105 (1999); the plain-view exception, *Harris v. United States*, 390 U.S. 234 (1968); the "plain feel" exception, *State v. Evans*, 67 Ohio St.3d 405, 408 (1993); the consensual-search exception, *Florida v. Bostick*, 501 U.S. 429 (1991), and the "stop and frisk" exception, *Terry v. Ohio*, 392 U.S. 1 (1968). As stated

---

[1] In *Gant,* the U.S. Supreme Court narrowed the circumstances in which such searches are permissible:

"Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." *Arizona v. Gant.* 556 U.S. at 1723–1724.

above, the trial court concluded Gombeda's search of the wallet (that led to additional searches and additional drugs) was proper under the established exception of a warrantless search incident to a lawful arrest.

**{¶18}** In *Chimel,* the United States Supreme Court discussed the well-recognized right of a police officer to search a suspect incident to a lawful arrest. See *Chimel,* at 763 (stating when an arrest is made, it is reasonable for the arresting officer to search the person arrested to remove any weapons and seize any evidence on the arrestee's person to prevent its concealment or destruction). The exception allows officers to conduct a search that includes an arrestee's person and the area within the arrestee's immediate control. *Chimel,* at 762–763.[2] Such exception "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations". *Gant*, at 332, citing *United States v. Robinson*, 414 U.S. 218, 230–234 (1973), and *Chimel,* at 763. The facts and circumstances of each situation must be examined to determine whether justification for the warrantless search existed. *Robinson,* at 358*.*

**{¶19}** An arrest *need not* precede the search so long as the evidence uncovered during the search was not used to support probable cause for the arrest. See *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980) (finding that where petitioner admitted ownership of a sizable quantity of drugs found in another's purse, police clearly had probable cause to

---

[2] The Ohio Supreme Court has determined that searches may also extend to the personal effects of an arrestee. *Smith,* ¶ 13. For example, the search of a purse is reasonable under the Fourth Amendment in certain circumstances, *State v. Mathews*, 46 Ohio St.2d 72 (1976), and the United States Supreme Court has held that it is reasonable for police to search any container or article on a defendant's person—including a shoulder bag—in accordance with established inventory procedures. *Smith,* ¶ 13, citing *Illinois v. Lafayette*, 462 U.S. 640 (1983).

place petitioner under arrest and the search of the person that uncovered money and a knife was search incident to arrest - even though the search preceded the arrest); *State v. Smith*, 2021-Ohio-3330, ¶ 73 (7th Dist.), quoting *Rawlings*, at 111; *State v. Jones*, 112 Ohio App.3d 206 (2d 1996). The critical factor is not whether an arrest has been effectuated, but whether *probable cause existed to support an arrest* prior to the search. *Rawlings* at 111; see, also, *State v. Allen,* 2003–Ohio–2847, citing *State v. Bing* (1999), 134 Ohio App.3d 444, 445-48; *Smith*, ¶ 73; *State v. Scansy*, 2004-Ohio-4918, ¶ 20 (4th Dist.) (noting that officer did not arrest the defendant until after the search, but officer did have probable cause to conduct the search). Unlike a *Terry* stop and frisk, a search incident to arrest is not limited to the discovery of weapons but may include evidence of a crime as well. *Gustafson v. Florida*, 414 U.S. 260 (1973); *Robinson*, supra; *State v. Ferman*, 58 Ohio St.2d 216 (1979); *State v. Rodriguez*, 83 Ohio App.3d 829, 833 (1992).

**{¶20}** Necessarily, if an officer receives information that an outstanding arrest warrant exists, the officer may arrest or detain the individual. This is true even if the information turns out to be erroneous, provided that the officer had no information suggesting that the warrant was improperly issued or otherwise invalid. See *U.S. v Leon* (1984), 468 U.S. 897 (holding the Fourth Amendment exclusionary rule should not be applied to bar the use of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid); See also *Massachusetts v. Sheppard*, 468 U.S. 981 (1984) (holding that there was an objectively reasonable basis for police officers' mistaken belief that search warrant authorized the search which officers conducted); *State v. Banks*, 1994 WL 220401 (2d Dist.) (finding that the officer, in good faith, relied upon the information transmitted to him

that there was an outstanding warrant for the defendant's arrest and such reliance was justified; such that the good faith exception to the exclusionary rule required the Court to overrule the motion to suppress); *State v. Loeffler*, 2006-0hio-5215 (5th Dist.). Necessarily, when an arrest warrant exists for an individual, no independent probable cause is needed to search incident to an arrest on that warrant. See *Leon, Sheppard, Banks,* supra*.*

{¶21} In *Leon*, the U.S. Supreme Court discussed the application of the judicially created "exclusionary rule" and its good faith exception. The Court stated: "the balancing approach that has evolved in various contexts—including criminal trials—'forcefully suggest[s] that the exclusionary rule be more generally modified to permit the introduction of evidence obtained in the reasonable, good-faith belief that a search or seizure was in accord with the Fourth Amendment.'" *Leon*, at 909, quoting *Illinois v. Gates*, 462 U.S. 213 (1983); see also *Sheppard*, supra (exclusionary rule would not be applied since officers conducting the search acted in objectively reasonable reliance on a warrant issued). Thus, if an officer relies on information that a *valid* warrant exists, any evidence found during a search incident to the arrest will not typically be subject to the Exclusionary Rule. *Banks* at *4; *Loeffler*, supra.

{¶22} The above principles were followed by this Court in *Loeffler*. There, the defendant was stopped for a speeding violation, and dispatch advised the citing officer that the owner of the vehicle had a warrant for his arrest. *Loeffler,* ¶ 2. The officer confirmed the driver was the owner of the vehicle and placed him under arrest for the outstanding warrant. *Id*. During a search incident to his arrest, the officer found marijuana and paraphernalia. *Loeffler,* ¶ 3. The defendant was subsequently detained in the back

of the officer's cruiser while the defendant's vehicle was searched. During the vehicle search, the officer found baggies of cocaine on the floor of the defendant's vehicle. *Loeffler*, ¶4. Subsequently, the officer learned that he was outside the warrant's "pick up radius."

{¶23} The defendant was indicted for possession of cocaine and filed a motion to suppress evidence, arguing that the officer had no right to detain and conduct a pat-down search of the defendant. *Loeffler*, ¶5. The Motion was overruled, the defendant pled no contest, and he appealed. This Court held that the detention, arrest, and pat-down of the defendant were all proper. *Id.* ¶¶20-22. This Court, relying on *Banks*, stated:

> In the matter currently before the court, appellant first challenges the pat-down search of his person on the basis that it was inappropriate because he was merely stopped for speeding. However, as noted above, prior to exiting his cruiser, dispatch informed Trooper Buxton that the registered owner of the vehicle had an outstanding warrant. Once appellant indicated to Trooper Buxton that he owned the vehicle, Trooper Buxton made the decision to place appellant under arrest and conduct a pat-down search incident to arrest. It was only after Trooper Buxton discovered the [drugs] that he learned he was outside of the pickup radius for the warrant.
> Similarly, as in *Banks*, Trooper Buxton, in good faith, relied upon information transmitted to him by dispatch. We find this reliance was justified despite the fact that dispatch subsequently informed Trooper Buxton that the warrant was outside his pickup radius. We reach this conclusion based upon the law set forth in both *Leon* and *Sheppard*.

We also conclude there is no deterrent value in granting the motion to suppress because Trooper Buxton merely relied upon information which he believed to be correct and information which is relied upon daily by police officers. Because of the existence of the arrest warrant, Trooper Buxton justifiably believed that he had the authority to arrest appellant and conduct a pat-down search incident to that arrest. Further, we find no misconduct on the part of Trooper Buxton in acting upon that belief. Because Trooper Buxton's reliance was justified under the circumstances, the arrest of appellant and subsequent pat-down search is outweighed by the social costs involved in excluding tangible, reliable evidence.

{¶24} Similarly, here, dispatch informed Gombeda that Appellant had two outstanding warrants for his arrest. Once Gombeda confirmed Appellant owned the vehicle, Gombeda instructed him out and made the decision to detain Appellant, handcuffed him, conducted a pat-down search, and then searched the wallet. The difference between the present case and *Loeffler* is simply that Gombeda stated to Appellant that he was being "detained" and did not expressly state that he was under "arrest" as the officer did in *Loeffler.* We conclude that based on the circumstances of this case, the fact that Gombeda did not utter the words "under arrest" is a distinction without a difference.

{¶25} Dispatch continued to investigate the warrants as quickly as possible to determine the facts so Gombeda could take appropriate action. Gombeda instructed Appellant he was being detained while dispatch verified the warrants and told Appellant he was going to check any other items "in case he would be going to jail". It is undisputed

Appellant was not free to leave the situation at any point, a fact that indicates to a reasonable person that he was effectively under arrest. *Taylor*, at 749.

**{¶26}** Despite Gombeda's testimony that a detention does not necessarily mean an arrest, and that he advised Appellant "you're being detained" rather than, "you are under arrest", Gombeda acted with a reasonable expectation that Appellant could or would be arrested at the time of the wallet search. Importantly, "[t]he magic words 'you are under arrest' are not necessary to constitute an arrest." *State v. Maurer*, 15 Ohio St.3d 239, 255 (1984); *see also In re S.C.W.*, 2011-Ohio-3193, ¶ 30 (9th Dist.); *State v. Guber*, 2024-Ohio-2846, ¶ 7. Further, as set forth above, an arrest *need not* precede the search. *Rawlings* at 111; *Scansy*, ¶ 20; *Smith,* ¶ 73. In the final analysis, no matter what this Court calls it, Appellant was effectively arrested at the time of the wallet search, a search that led to more thorough searches and the discovery of additional drugs. Simply stated, Gombeda conducted the pat-down and wallet search incident to a lawful arrest, after he was aware of the two outstanding arrest warrants, but *prior to* being notified that defendant was outside the pickup radius.[3]

---

[3] This court is unaware of any authority that requires the police officer to determine if the valid arrest warrant is within some pickup radius. This "pickup" radius appears to be set forth in the warrant itself and is widely followed by police officers, based on fiscal restraints and policies of various police departments. It is unclear what legal consequences, if any, result when determining whether a police officer is authorized to conduct a search incident to a lawful arrest.

Somewhat relatedly, the Tenth District held that an individual's claim for "false imprisonment", premised on the Ohio Adult Parole Authority improperly issuing an arrest warrant with a nationwide pickup radius, failed on the merits. "This is so because, even assuming arguendo that OAPA disregarded its own internal policies on this subject, a violation of such policies does not give rise to a cause of action for false imprisonment. See *Cotten v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 18AP-240, 2018-Ohio-3392, ¶ 10; see also *Gordon v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 17AP-792, 2018-Ohio-2272, ¶ 16, citing *State ex rel. Larkins v. Wilkinson*, 79 Ohio St.3d 477, 479 (1997)." See *Washington v. Ohio Adult Parole Authority*, 2020-Ohio-3385, ¶ 27.

{¶27} Moreover, as this Court found in *Loeffler*, there is no deterrent value in granting the motion to suppress in this case. Gombeda relied, *in good faith*, on information from dispatch. Such information is necessarily relied upon daily by police officers who must make swift decisions based upon the information at the time. The minutes that may seem few to this Court are significant and critical to police officers on the street. As such, the intrusion on Appellant's Fourth Amendment interests do not outweigh the promotion of legitimate governmental interests under these facts. If the two outstanding warrants for Appellant's lawful arrest did not exist, this case would be much different. The warrants did exist. Thus, based on the legal principles set forth in *Leon, Sheppard, Loeffle*r, and *Banks*, Gombeda's *Terry* pat-down and search of Appellant's wallet was a proper search incident to a lawful arrest. **Accordingly, we overrule Appellant's sole assignment of error.**

## CONCLUSION

{¶28} Appellant's sole assignment of error is overruled, and the judgment of the Guernsey County Court of Common Pleas is affirmed.

By: Montgomery, J.

Hoffman, P.J. and

Gormley, J. concur.